## JENISON and Others v. GRAVES and Another.

If one man buy land with his own money, and take the deed in the name of another, a trust results by implication in favour of him who paid the money.

The existence of a resulting trust may be proved by parol evidence, in opposition to

the face of the deed and to the answer of the trustee; but to establish the trust, under those circumstances, the clearest and the strongest testimony must be produced.

A bill in chancery, when denied by the answer, must be proved by at least two witnesses, or by one witness and corroborating circumstances, or the complainant cannot succeed.

A father may claim the services of his children, whilst they are under lawful age and are supported by him. But should he, at any time, relinquish that claim, the profits of his children's labour then belong to themselves, and cannot be seized by the creditors of the father.

If a son of full age purchase land to be paid for in labour, and his father, being employed for the purpose by the son, perform a part of the work; or if the payment is to be in money, and the father lend his son a part of the money with which the payment is made;—a trust, *pro tanto*, will not, in either of those cases, result to the father.

If an execution-defendant have goods subject to the execution, and they be fraudulently placed by a third person out of the reach of the execution, such third person may be compelled by the execution-plaintiff, in a Court of chancery, to account for the property.

APPEAL from the *Marion* Circuit Court.

BLACKFORD, J.—This was a bill in chancery, filed by *Bartlett Graves* and *Harvey Gregg* against *Rufus Jenison, David E. Wade, Samuel Jenison*, and *Stephen Brown*. The cause was submitted to the Circuit Court upon bill, answers, and proofs; and that Court rendered a decree against *Rufus Jenison, David E. Wade*, and *Samuel Jenison*, as to a part of the complaint against them, and dismissed the bill as to *Brown*, but without costs. The defendants have appealed to this Court.

It is stated in the bill, that, in 1818 or 1819, *Rufus Jenison*, one of the defendants, gave his notes to *Bartlett Graves*, one of the complainants, for the sum of 533 dollars; that, in 1820, he gave to *Thomas Buckner*, the assignor of *Harvey Gregg*, the other complainant, his note for the sum of 170 dollars; that, soon after the giving of these notes, *Rufus Jenison*, the maker, became insolvent; that he was, at the time of his insolvency, possessed of a tract of land in *Kentucky* on which he resided, but which he had previously mortgaged to *David E. Wade*, one of the defendants, for the security of a *bona fide* debt; and that, about the time of his becoming insolvent, he sold and conveyed all his interest in this land to *Wade*, the mortgagee. The bill states that, in 1823, when *Rufus Jenison* relinquished all his claim to the land, *Wade* advanced to him 100 dollars, in order that he might afterwards purchase other land in *Indiana*; that, in the spring of 1824, *Rufus Jenison*, with these 100 dol-

*Nov. Term, 1831.*

JENISON
v.
GRAVES.

*Tuesday, November 8.*

Nov. Term,
1831.

JENISON
v.
GRAVES.

lars, came to this state, and purchased a tract of land in *Marion* county; that, to defraud his creditors, he took the title in the name of *Wade;* that, soon afterwards, he removed with his family from *Kentucky,* settled on this land where he made valuable improvements without any contract with *Wade,* and became possessed of considerable personal property.

The bill states that, in 1825, *Rufus Jenison,* to defraud his creditors, executed a bill of sale of his personal property to *Daniel Pattingall,*—still keeping possession of the same; that, in 1826, when an execution was levied on this personal property, it was fraudulently bought in by *Benjamin Atherton* with money furnished to him by *Rufus Jenison,* in whose possession it continued to remain; that *Thomas Buckner,* afterwards, commenced a suit against *Rufus Jenison* on the note for 170 dollars, and, in the spring of 1827, whilst this suit was pending against him, the defendant, for the further protection of his property from execution, went to *Cincinnati* and obtained in the name of his son *Samuel,* one of the defendants, who had lately become of lawful age, a deed from *Wade* for the land on which he, *Rufus Jenison,* and his family resided,—his son, the grantee, paying no consideration for the land, and not being present when the deed was executed; and that, upon *Rufus Jenison's* return from *Cincinnati,* he fraudulently sold all his personal property to his son *Samuel,* taking from him a lease for the same property, and for the land conveyed by *Wade* on which they resided, at the annual rent of 150 dollars.

The bill states that, in *October* 1827, *Thomas Buckner* recovered judgment for 187 dollars, and *Bartlett Graves* recovered judgment for 423 dollars with interest, against *Rufus Jenison,* in the *Marion* Circuit Court; that *Graves* also, about the same time, recovered judgment against him before a justice of the peace for 164 dollars; that an execution issued on the judgment of the justice in the same month of *October,* and was levied on a variety of personal property in the possession of *Rufus Jenison;* that this property was claimed by *Samuel Jenison,* the right thereto tried by a jury, and, with the exception of a brown mare, found to belong to the execution-debtor, *Rufus Jenison;* that the property, the mare excepted, was then sold by virtue of the execution to *Samuel Jenison,* and the amount of the sale paid over by the constable to *Samuel Jenison,* as

landlord of the premises, in part discharge of two quarters' rent alleged to be due him from his father; that the brown mare, found by the jury to belong to *Samuel Jenison* and which had been delivered to him by the constable, was in reality the property of *Rufus Jenison*, and liable to the payment of his debts. The bill states that the judgment obtained by *Buckner* against *Rufus Jenison*, is, by assignment, the property of *Gregg*, one of the complainants; that, in 1828, the complainants, *Graves* and *Gregg*, took out executions on their judgments rendered in the *Marion* Circuit Court against *Rufus Jenison;* and, there being no goods and chattels, the executions were levied on the real estate on which *Rufus Jenison* resided, and which had been conveyed to his son by *Wade;* and that the rents and profits being first offered and not selling, the fee-simple in the land was sold by the sheriff to the complainants for the sum of 200 dollars.

The bill further states, that, in the spring of 1826, *Samuel Jenison*, at the request and as the agent of his father, *Rufus Jenison*, purchased of *George Dolbair* a tract of land in *Marion* county for 125 dollars; that the payment was made with the property, the money, and the labour of *Rufus Jenison*, whilst *Samuel* was a minor, living with his father; and that the deed was taken in *Samuel's* name, to evade the payment of the debts due from *Rufus Jenison* to the complainants. The bill further states, that *Samuel Jenison* has converted to his own use the personal property which he fraudulently bought of and leased to his father; that he has concealed other personal property of *Rufus Jenison's* from his creditors; and that he has been in the possession, and enjoyed the rents and profits, of the land purchased in the name of *Wade*, since *Wade* conveyed the same to him. The bill further states, that, in *November*, 1826, *Rufus Jenison* purchased from the *United States*, and paid for, two other tracts of land situated in *Marion* county; but, to defraud his creditors, took the title in the name of *Stephen Brown;* that these lands are the *bona fide* property of *Rufus Jenison*, and in his possession; and that *Stephen Brown* has, since the date of the complainants' judgments, kept concealed in his possession personal property belonging to *Rufus Jenison*, for the purpose of fraudulently protecting it from the complainants' executions.

The prayer of the bill is, 1st, That the land purchased by *Rufus Jenison* of the *United States*, in the name of *Wade*, may be adjudged to have been *Rufus Jenison's* at the time of the sheriff's sale to the complainants; that that sale by the sheriff may be confirmed, and the complainants put into possession of the land; and that *Samuel Jenison* may be obliged to account for the rents and profits. 2dly, That the land bought by *Samuel Jenison* of *George Dolbair*, and that bought by *Rufus Jenison* of the *United States* in the name of *Stephen Brown*, may be adjudged to be the property of *Rufus Jenison*, and made subject to the judgments of the complainants. 3dly, That *Samuel Jenison* and *Stephen Brown* may be compelled to account for the personal property of *Rufus Jenison*, fraudulently protected by them from the complainants' executions.

To this bill of complaint, the defendants have all filed their answers.

The answer of *Rufus Jenison* is as follows. He admits that he gave the notes to the complainants, and that judgments were obtained upon them, as set out in the bill. He states that he formerly owned a farm in *Kentucky*, which, in 1816, he mortgaged to *David E. Wade*, one of the defendants, to secure the payment of 1,100 or 1,200 dollars, borrowed money; that in 1819, he sold the farm to *Wade* for 600 dollars, besides the mortgage money; that he then leased the farm of *Wade* for four years at 240 dollars *per annum*, which was to be re-conveyed to him, should he, at the end of the term, pay *Wade* 1,700 dollars besides the rent; that, in 1823, being unable to redeem the land, he gave up the possession to *Wade*, and cancelled the agreement to re-convey, in consideration of *Wade's* releasing certain rents and other demands due to him. He says that, at the time he was coming to *Indiana*, he received from *Wade* 100 dollars, with a request to purchase for *Wade* 80 acres of land; that he bought the land accordingly, and afterwards came and occupied it with the permission of *Wade* as a tenant at will; that he had no knowledge at the time he received the money, or at the time he took possession of the land, as to what disposition *Wade* intended to make of the property. He says that his son *Samuel Jenison*, one of the defendants, was 21 years of age on the 25th of *September*, 1826; that he had certain perquisites arising from the defendant's farm in *Kentucky*, and that

when he came to this state, the defendant gave him his time, and the privilege of transacting business for himself. He says that, in the spring of 1827, he applied to *Wade,* at *Cincinnati,* to ascertain whether he would not sell the land occupied by the defendant to his son *Samuel;* that *Wade* refused to sell it to *Samuel,* but said he would give it to him; and that *Wade,* accordingly, executed a deed for the land to *Samuel Jenison,* and delivered the same to the defendant, who afterwards delivered it to the grantee.

This defendant, *Rufus Jenison,* denies that he either purchased, or requested his son *Samuel* to purchase, any land of *George Dolbair.* On the contrary, he avers that the purchase was made against his advice and consent; that he furnished no part of the consideration, and has no interest in the property. He denies all knowledge of one of the tracts of land, charged to have been bought by him in the name of *Stephen Brown,* one of the defendants; but he admits that he did purchase, in *Brown's* name, the other tract described in the bill. He says, however, that he purchased it merely as the agent of *Brown,* and paid for it with *Brown's* money; that he has no interest in it, and never had it in possession. He denies that any of his personal property was ever concealed by *Brown,* for the purpose of securing it from execution. This defendant admits, that, in *April,* 1827, he leased of his son *Samuel* the land conveyed by *Wade,* and also the personal property mentioned in the bill; that *Samuel* had previously, on the same day, bought this personal property of him; and that it remained in the defendant's possession, until it was levied on and sold by virtue of an execution in favour of one of the complainants. He admits, also, that, in 1825, he sold the most of his personal property to *Daniel Pattingall;* and, at the same time, kept it in his own possession; and that afterwards, when an execution against the defendant in favour of one of the complainants, was levied on this property, *Benjamin Atherton,* with the defendant's money and at his request, bought it in for him.

The answer of *David E. Wade* is as follows. This defendant makes the same answer with *Rufus Jenison,* as to the debt due to him from *Jenison,* as to the mortgage given to him for its security, and as to his subsequent purchase of *Jenison's* farm. He says that he would have rather had a return of the money

lent to *Jenison*, than a conveyance of the farm; but that it was impossible for *Jenison* to make payment. He states that he furnished *Rufus Jenison* 100 dollars, to buy for him, this defendant, the land mentioned in the bill; that *Jenison* made the purchase for him as his agent; and that the purchase-money for this land was all paid by him, this defendant, without any contract with *Jenison*, and without *Jenison's* paying or agreeing to pay any part of it. He states further, that he intended, at the time of the purchase, to make a present of the land in question to *Samuel Jenison;* that he has since executed and delivered a deed to him for it; and that neither *Rufus Jenison*, nor *Samuel Jenison*, ever paid him or contracted to pay him one cent for this land.

The following is the answer of *Samuel Jenison*. This defendant's statement is the same with *Rufus Jenison's* respecting his age, his privileges in *Kentucky*, and his right to receive the profits of his labour and trade for himself, given to him by his father since their removal to this state. He makes a similar statement, also, to that of his father, relative to *Wade's* execution of a deed to him for the land mentioned in the bill, without his paying any consideration for the same. He says that, in *October*, 1826, he purchased of *George Dolbair* the tract of land mentioned in the bill, for the sum of 125 dollars, and has since paid for it with his own labour and funds. He sets out particularly the various items of payment, and, among other things, the payment of 50 dollars by clearing land for *Dolbair.* He says that he was 21 years of age before he made this purchase; that it was not made at the instance of his father, but in opposition to his advice; and that his father paid no part of the consideration. This defendant admits, that the personal property mentioned in the lease to his father, except a brown mare, was purchased by him of his father on the same day on which the lease is dated; that this property, the mare excepted, was in possession of his father both before and after the purchase and lease; that the same continued in his father's possession until it was levied on and sold by virtue of an execution, in favour of one of the complainants, against his father; and that the constable paid over the proceeds of the sale to the defendant as landlord of the premises. He says that the

brown mare, alleged in the bill to be his father's, belongs to himself, and was bought by him of *John S. Moultin.*

The answer of *Stephen Brown* as to the purchase of land for him by *Rufus Jenison,* and as to his concealment of *Jenison's* goods, is the same with the answer of *Rufus Jenison.* He denies that *Rufus Jenison,* or any of his family, ever had any interest, legal or equitable, in the land bought by him for this defendant; and he denies, also, that he ever concealed any of *Rufus Jenison's* property from his creditors.

After the filing of these answers, the complainants filed an amendment to their bill, which was answered by three of the defendants. It is unnecessary, however, to notice particularly these latter proceedings, as they furnish no additional matter material to the decision of the cause.

The first question which this case presents for our consideration is,—Whether the land purchased in the name of *Wade,* and conveyed by him to *Samuel Jenison,* is subject to the judgments of the complainants against *Rufus Jenison?*

The bill admits, that the legal title to this land was vested in *Wade* by a patent from the *United States.* The complainants contend, however, that the land was paid for with the money of *Rufus Jenison;* and that, therefore, the beneficial interest and real ownership are in him. The law is admitted, that where one man buys land with his own money, and takes the deed in the name of another, a trust results by implication in favour of him who paid the money. *Boyd* v. *M•Lean,* 1 Johns. C. R. 582. It is only the question of fact, in this case, *as to whose money was paid,* that is in dispute between these parties. The answers of *Wade* and *Rufus Jenison* deny the trust, and aver the land to have been bought with the money of *Wade.* The answer of *Wade* places the case on very strong ground against the complainants. It is even said by a respectable writer to be doubtful, whether the answer of the trustee, denying such a trust, can be contradicted by parol testimony. Sugden on Vendors, p. 415. It is decided in *New-York,* however, that parol evidence is admissible under these circumstances; but the Chancellor says, that if the point were *res integra,* he would not admit the evidence. *Boyd* v. *M•Lean,* 1 Johns. C. R. 582. The claim, in this case, is opposed by the face of the patent, and by the answer of the trustee. These, we agree,

may be contradicted by parol evidence, but to succeed against them, the clearest and the strongest testimony must be produced.

The defendants' counsel inquired, in the argument, whether *Rufus Jenison* could have established a trust, in this case, against *Wade?* and contended, that if *he* could not, his creditors cannot. We have looked into the record before us, with a view of finding an answer to this question; but our search has been in vain. The complainants say, that the purchase-money belonged to *Rufus Jenison.* Where, we ask, is the evidence of that assertion? The *onus probandi* lies on the complainants. There have been, to be sure, a great number of witnesses examined; but there is not one of them, who pretends to any direct knowledge on the subject. The complainants rely entirely on presumptive proof. They show that *Rufus Jenison* was the actor in delivering the money to the receiver of the land-office; that he settled on the land with his family soon after the purchase; that he made considerable improvements, as if the land were his own. They show that *Wade,* three years after the purchase, conveyed the land, without consideration, to the son of *Rufus Jenison;* and that *Rufus Jenison,* after this, executed a relinquishment of ground for a road through the land. They show, also, several fraudulent attempts of *Rufus Jenison,* whilst living on the premises, to secure his personal property from his creditors. From these circumstances we are called on to presume, that *Rufus Jenison* paid his own money for this land, and that it therefore is his property.

In opposition to this circumstantial proof, *Wade* relies on his patent from the *United States* for the land; and also upon his answer, in which he expressly denies the trust, and avers that *he bought the land with his own money,* through the agency of *Rufus Jenison.*

With this statement of the principal grounds relied on by the parties, we refer again to the question,—Could *Rufus Jenison,* under these circumstances, have established a trust-estate in the premises against *Wade?* We certainly think not. Even in ordinary cases, where the material allegation of the bill is denied, circumstances like those here relied on, would of themselves be of no benefit to the complainant. A bill, when denied, must be proved by at least two witnesses, or by one witness

and corroborating circumstances. *Smith* v. *Brush*, 1 Johns. C. R. 459.—Stat. 1824, p. 285.—*Green et al.* v. *Vardiman et al. Nov.* term, 1830. There is not, in the present case, a single witness directly proving the material allegation in the bill; and it is impossible, therefore, that the circumstantial proof relied on, could have shaken the legal title of *Wade*, and the positive denial of the trust contained in his answer. If, then, the testimony be not sufficient to enable *Rufus Jenison* to establish the trust in question, *a fortiori*, it cannot enable the complainants, his creditors, to do so. In deciding the title of *Wade* to be valid, we put an end to the complainants' claim to the land under consideration. *Wade*, as the legal and beneficial owner, had a right to make a present of the land to *Samuel Jenison*, and the latter has a right to hold it, without either of them being accountable to the creditors of *Rufus Jenison*.

The next question to be examined is,—Whether the land purchased by *Samuel Jenison* from *George Dolbair*, is subject to the judgments against *Rufus Jenison?*

The charge is, that this land was bought by *Samuel Jenison*, a minor, for his father *Rufus Jenison;* and that the latter paid for it, and is the real owner. This is opposed, 1st, by the deed from *Dolbair* to *Samuel Jenison*, in which the purchase-money is stated to have been paid by the grantee; and 2dly, by the express denial of these defendants. The answer of *Samuel Jenison* avers, that he bought the land for himself, after he became of lawful age, in opposition to his father's advice; and that he paid for it with his own labour and funds. The complainants produce no evidence that can, in the slightest degree, affect this defence. They principally rely upon some work, done by two of *Rufus Jenison's* minor sons in aid of *Samuel Jenison*, whilst he was clearing land for *Dolbair*, in part payment for the land previously purchased. These young men who thus assisted their brother, it is proved, had the permission of their father to work and trade for themselves; and they were employed by their brother *Samuel* to assist him in the performance of this work, and were paid for their labour by him. No title, surely, can be claimed for *Rufus Jenison* to any part of this land, on the ground of his having paid a part of the consideration by this labour of his minor sons.

The father, it is true, may claim the services of his children,

whilst they are under lawful age, and are supported by him. 1 Bl. Comm. 453. But, we conceive, he may relinquish that claim at any time, and when he does, the profits of his children's labour belong to themselves. The property acquired by a minor son, in such case, is as much his own, as if it were a legacy bequeathed to him; and it cannot be seized by the creditors of the father. Besides, these young men were employed by their brother *Samuel Jenison,* and performed the labour for him; and even if the father were entitled to the profits of their work, still he could have no claim for the same, but on the person who had employed them. It would have been the same case, had *Rufus Jenison* himself been hired by his son *Samuel* to do this work, in part payment for the land; or had he even, *bona fide,* lent *Samuel* a sum of money to assist him in the payment. In neither of these cases, would the father be considered as paying part of the purchase-money, from which a trust *pro tanto* could result to him. His claim would be alone on his son for the work done or the money lent.

We conclude, therefore, that the complainants have no claim on the land purchased of *Dolbair* by *Samuel Jenison.*

The third question in this cause is,—Have the complainants any claim on the land bought in the name of *Stephen Brown?*

There are two tracts of land, charged in the bill to have been purchased by *Rufus Jenison* with his own money, and the titles to have been fraudulently taken by him in the name of *Brown.* This charge is denied by the answers of these defendants, *Rufus Jenison* and *Brown.* Of one of the tracts of land, they have no knowledge. The other was bought for *Brown,* according to the answers, in the name and with the money of *Brown,* by his agent *Rufus Jenison.* To avoid the statement in the answers,—viz. that *Brown* furnished the purchase-money,— the complainants say, the money was lent by him to *Rufus Jenison,* and has been re-paid to him by the labour, for a year, of one of the minor sons of *Rufus Jenison.* The only proof on this subject is, that, soon after the purchase, *Rufus Jenison,* junior, a minor son of *Rufus Jenison,* did work a year for *Brown.* But it is also in evidence, that this labour was for the young man's own benefit; he having, at the time, a general permission from his father to work for himself. The contract between young *Jenison* and *Brown* was, that the former should receive

from the latter 100 dollars for the year's work, to be paid in land or money. *Brown*, afterwards, paid the young man in money for the work he had done, who gave about one-half of the amount to his father, *Rufus Jenison*, and expended the other half for clothes and other necessaries for himself. This transaction is, therefore, very satisfactorily explained; and the inference which the complainants would draw from it,—viz. that the money was *Rufus Jenison's* which paid for the land bought in *Brown's* name,—has no foundation in the facts of the case.

We come now to the last point in this tedious cause. The bill charges *Samuel Jenison* and *Stephen Brown* with concealing, or converting to their own use, the personal property of *Rufus Jenison*, for the purpose of defrauding his creditors. There is no doubt, that if these defendants have fraudulently placed any of the goods of *Rufus Jenison* out of the reach of the complainants' executions, they may be compelled to account for the property in a Court of chancery. *Hendricks* v. *Robinson*, 2 Johns. C. R. 283, 296. This part of the bill, however, like the other parts of it already noticed, is not sustained by the evidence. The charge is denied, in their answers, by these defendants, *Brown* and *Samuel Jenison*. There is no evidence whatever, on this subject, against *Brown*. It appears, with respect to *Samuel Jenison*, that, about the time he became of age, he bought a mare of *Moultin*, which he kept on the farm occupied by his father. An execution in favour of one of the complainants was levied on this mare, but, on a trial of the right of property, she was adjudged to be *Samuel Jenison's*. The answer also of *Samuel Jenison*, avers the mare to be his own, and to have been paid for by himself; and there is no proof to the contrary. It further appears that *Samuel Jenison* did, at one time, buy the personal property belonging to his father, and then lease it to him, with the fraudulent intent of placing the same beyond the reach of executions against his father. The scheme, however, did not succeed. The property was afterwards levied on and sold, by virtue of an execution in favour of one of the complainants against *Rufus Jenison*. The contemplated fraud, therefore, failed in its purpose; and, of course, the complainants sustained no injury by it. It is true, the proceeds of this sale appear to have been afterwards paid over by

Nov. Term,
1831.

Doe
v.
Owen.

the officer to *Samuel Jenison*, for rent due to him as landlord of the premises on which the debtor lived. But as to that, no fraud was proved. *Samuel Jenison* was, as has been already shown, the *bona fide* owner of the farm on which his father lived, and had a right to claim the proceeds of the execution-sale, in payment of the rent due to him.

There is clear proof of fraudulent purchases of *Rufus Jenison's* personal property by *Pattengall* and *Atherton*, as charged in the bill; but it is not shown that these fraudulent transactions benefited any of the defendants, or injured either of the complainants. The property, after these purchases, continued, as before, in *Rufus Jenison's* possession; and was subsequently sold, on an execution against him, issued by one of the complainants.

We have now gone through the whole of this cause, and are satisfied that neither the land purchased for *Wade* by *Rufus Jenison*,—nor the land purchased for himself by *Samuel Jenison*,—nor the land purchased for *Brown* by *Rufus Jenison*,—is subject to the judgments of the complainants against *Rufus Jenison.* We are also satisfied, that no personal property has been fraudulently protected from the complainants' executions against *Rufus Jenison*, either by *Samuel Jenison* or by *Brown.* The opinion of this Court, therefore, is,—that the complainants have no foundation for their bill; and that the same should have been dismissed by the Circuit Court, at the costs of the complainants.

*Per Curiam.*—The decree is reversed with costs. Cause remanded to the Circuit Court, with directions to dismiss the bill, &c.

*Brown, Morrison,* and *Caswell,* for the appellants.
*Fletcher* and *Gregg,* for the appellees.