No. 9355.

## RADCLIFF ET AL. *v.* RADFORD.

DEMURRER TO EVIDENCE.—*New Trial.*—Where there is a demurrer to evidence, a motion for a new trial is not admissible.

SAME.—Upon a demurrer to evidence, every reasonable inference against the demurrant, which might be drawn by a jury, must be taken as true by the court.

RESULTING TRUST.—*Husband and Wife.—Conveyance.—Agreement.*—Where a husband buys land with his wife's money, taking a deed therefor in his own name, without her consent, or with her consent, agreeing orally to hold the land in trust for her, a trust results in her favor under section 2976, R. S. 1881.

BILL OF EXCEPTIONS.—*Partition.—Report of Commissioners.*—A bill of exceptions is necessary to present, in the Supreme Court, error of the court below in refusing to set aside a report of commissioners in partition.

From the Morgan Circuit Court.

*W. R. Harrison, W. E. McCord, S. Claypool* and *W. A. Ketcham,* for appellants.

*G. W. Grubbs* and *J. H. Jordan,* for appellee.

BICKNELL, C. C.—This was a suit to enforce a trust in land held by a husband for the use of his wife, and, after her death, for the use of her two children by a former husband, they being her only heirs. The appellee was the survivor of these children, and was the sole plaintiff. The other child died, leaving issue, who were not parties to the suit.

The complaint, in each of its paragraphs, states that, in August, 1838, the husband and wife bought the land jointly, and that one-half the land was paid for with the separate

money of the wife, and each of the paragraphs states a trust valid under section 8 of our statute of trusts, 1 R. S. 1876, p. 916; and that the husband and wife occupied the land together during their joint lives, the husband afterwards remaining in possession until he died in 1879; that during his lifetime he always acknowledged the existence of said trust, but by his will he devised the land to the defendant Sarah Radcliff, who was his second wife, during widowhood, and if she should marry again, then to the other defendants, who were his brothers and sisters; that said Sarah is in possession of the land, and, although requested, refuses to convey to the plaintiff any part of it. The complaint prays that one-fourth of the land be decreed to be held in trust for the plaintiff; that the title thereto be vested in him; that partition be made, and that said one-fourth be set off to the plaintiff, and that he may have other proper relief.

Demurrers to these paragraphs for want of facts, etc., were overruled by the court. The defendants answered jointly in five paragraphs, and the defendant Sarah Radcliff filed a cross complaint against the plaintiff. Demurrers to the cross complaint and to each of the defences except the first, which was the general denial, were overruled. The plaintiff answered the cross complaint by a general denial, and replied to each of the special defences by a general denial.

The cause was submitted to a jury for trial. After hearing the plaintiff's evidence the defendants demurred thereto. This demurrer was overruled by the court, who found for the plaintiff, that he is entitled to one-fourth in value of the land, and to partition, and found upon the cross complaint that said Sarah Radcliff was not entitled to have her title quieted. The defendants' motion for a new trial was overruled, and an interlocutory judgment was rendered upon the finding, and commissioners of partition were appointed, who assigned to the plaintiff one-fourth of the land, to wit, forty acres.

The defendants' motion to set aside the report of the commissioners was overruled.

The defendants' motion in arrest of judgment was overruled. Final judgment was rendered that the plaintiff should have, use and enjoy said forty acres in fee simple, and that his title thereto should be quieted, and that he should recover his costs.

The defendants appealed, assigning errors:

1. In overruling the demurrers to the complaint.

2. In overruling defendants' motion to suppress parts of the depositions of Jane Rosell and Catherine Duncan.

3. In overruling the demurrer to the evidence.

4. In overruling the motion for a new trial.

5. In overruling the motion to set aside the commissioners' report in partition.

6. In overruling the motion in arrest of judgment.

As to the fourth of these assignments, viz., overruling the motion for a new trial, this court held in *City of Indianapolis* v. *Lawyer*, 38 Ind. 348, that an exception to the ruling upon a demurrer to evidence sufficiently presents the question, on appeal, as to the correctness of the ruling, without a motion for a new trial, and in the same case, on page 371, the court declined to decide whether a motion for a new trial was right or not, but said, " We think, however, that no good reason was shown for the granting of a new trial, if in such a case a new trial could have been granted." In *Strough* v. *Gear*, 48 Ind. 100, the court held that where there is a demurrer to evidence, a motion for a new trial is unauthorized, unless it relates to an assessment of damages. The court gave no authority for this ruling, but it follows necessarily from the nature of a demurrer to evidence.

Demurrer to evidence is an admission of the truth of the fact alleged by the adverse party, or an acknowledgment that the evidence produced by him at the trial of the cause is true, but a denial of its operation and effect in law, whereupon the party demurs and prays the judgment of the court; for the fact being agreed on, the judges are the proper expositors of the law and are to determine the same, and not the jury. 7 Bacon Ab., Ed. of 1860, p. 672; Co. Litt. 72. There-

fore, originally, the adverse party could not be compelled to join in the demurrer unless the evidence was documentary; parol evidence was considered too uncertain; but afterwards it was held that in case of parol testimony, if the party demurring would make the facts certain by admitting the truth of the evidence and of all inferences of fact which might legitimately be made thereupon, then the adverse party would be compelled to join in the demurrer. 7 Ba. Ab. 674; *Gibson* v. *Hunter*, 2 H. Bl. 187. And such is the law now except that no formal joinder in demurrer is required. *Griggs* v. *Seeley*, 8 Ind. 264; *Andrews* v. *Hammond*, 8 Blackf. 540.

In *Chapize* v. *Bane*, 1 Bibb, 612, there was a demurrer to the evidence, and the party demurring had excepted to the introduction of depositions over his objection. The court said: "As the defendant's objection was improperly overruled, and the same evidence was demurred to by him, and appears material in the case, this exception, if not waived by the demurrer, would stand in the way of a judgment for the plaintiff. It seems, however, that the one party can not be permitted to rely on an exception to the admissibility of evidence, and to have a demurrer to the same evidence. By demurrer to the evidence he has supplanted his bill of exceptions. The demurrer admits the truth of the evidence, but questions its relevancy and sufficiency. The *particular manner* in which an *admitted truth* has been introduced into the cause as evidence, does not seem to be of any importance."

In the case at bar there were three reasons alleged for a new trial: 1. That the finding and judgment were contrary to the law and the evidence. 2. That the court erred in refusing to suppress certain depositions, and in admitting certain parol testimony, and in overruling the demurrer to the evidence. 3. That the court erred in its finding and judgment.

As to this last reason it will be observed that there was no exception to the form or substance of the judgment, and no motion to correct it. *Smith* v. *Tatman*, 71 Ind. 171.

In *Miller* v. *Porter*, 71 Ind. 521, this court held that by de-

murring to evidence the party waives all objections to its admissibility.    Under these rulings the motion for a new trial in this case presents no question.

The second error assigned, relating to the suppression of depositions, is not a proper assignment of error.    Buskirk Pr. 114, 224.

As to the first error assigned, the first paragraph of the complaint states that one-half of the land was paid for with the wife's money ; that the husband took the deed in his own name without her consent.

The second paragraph states that the husband bought half of the land with his wife's money, and took the deed in his own name, and that by agreement, without fraudulent intent, he was to hold the same in trust for her.

In each of these cases a trust arises under our statute, 1 R. S. 1876, p. 916, and was always recognized in equity before any such statute was enacted, *Elliott* v. *Armstrong,* 2 Blackf. 198 ; *Jenison* v. *Graves,* 2 Blackf. 440 ; *Blair* v. *Bass,* 4 Blackf. 539 ; and may exist without any writing.    2 Story Eq. Jur., section 1195.    There was, therefore, no error in overruling the demurrers to the complaint.    As to the third error assigned, the evidence comes up without a bill of exceptions.    *Baker* v. *Baker,* 69 Ind. 399.

Did the evidence prove a trust as alleged in the complaint ? Upon the demurrer to the evidence, if the existence of the trust could be reasonably inferred from the evidence, it was the duty of the court to overrule the demurrer.    If a jury, upon any reasonable construction of the evidence, might have found against the defendant, the court may do so.    The court, in such cases, may do all that a jury might reasonably have done.    *Griggs* v. *Seeley, supra; Thomas* v. *Ruddell,* 66 Ind. 326.

In *Pinnell* v. *Stringer,* 59 Ind. 555, and in *Eagan* v. *Downing,* 55 Ind. 65, the rule is thus stated :  " On a demurrer to evidence, everything will be taken against the party demurring which the evidence tends to prove, including every fair inference to be drawn from the evidence."

In *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R. 134), this court said : " The court, on the demurrer to the evidence, was bound to take, as true, all the facts which the evidence tended to prove, and such inferences from them as the jury might fairly have drawn, though the jury might not have drawn such inferences."

In *Lemmon* v. *Whitman,* 75 Ind. 318 (39 Am. R. 150), the court said : " The proof necessary to support the plea, especially upon a demurrer to the evidence, may be both equivocal and indefinite, and yet be deemed sufficient." And see *Trimble* v. *Pollock,* 77 Ind. 576.

If a jury, upon the testimony in this case, had found for the plaintiff, their verdict could not have been set aside as unsupported by evidence ; they might fairly have inferred from the evidence the existence of the trust as alleged in the complaint. There was, therefore, no error in overruling the demurrer to the evidence.

The fourth specification in the assignment of errors has already been considered.

The fifth error assigned is the refusal of the court to set aside the report of the commissioners of partition. This is a proper assignment of error.

In *Clark* v. *Stephenson,* 73 Ind. 489, this court said : " If the objection be to the report, or to the conduct of the commissioners, the proper practice is to move to set aside or to vacate the report ; and, if the ruling of the court be adverse, to save the exception by a bill of exceptions, showing the motion, the grounds of objection, the proofs made, if any, and the action of the court ; and, in this court, the error should be assigned directly on that action, just as upon a ruling on a demurrer."

In this case, although the record shows a motion to set aside the report of the commissioners, and that such motion was overruled by the court, and that the defendants at the time excepted thereto, yet there is no bill of exceptions there-

upon. This assignment, therefore, presents no question. *Kesler* v. *Myers*, 41 Ind. 543; *Angevine* v. *Ward*, 66 Ind. 460.

The sixth and last assignment of error is the overruling of defendant's motion in arrest of judgment. The reasons alleged therefor are: 1. That the complaint does not constitute a cause of action. 2. That the plaintiff's reply to the defendants' answer does not constitute a reply to defendants' answer.

It follows from what has already been said that there was no error in overruling the motion in arrest of judgment.

There is no available error in the record. The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things affirmed, at the costs of the appellants.

Filed Nov. 3, 1882.

## ON PETITION FOR A REHEARING.

BICKNELL, C. C.—The appellants insist that this is a case where the money belonging to the wife at the time of the marriage became, under the law then in force, her husband's money, and that when he used the same in the purchase of land, and took the deed therefor in his own name, the land became his absolutely, and was not subject to any trust in favor of his wife.

It is claimed that this case is governed by *Waldron* v. *Sanders*, 85 Ind. 270, and *Westerfield* v. *Kimmer*, 82 Ind. 365. In these cases it was decided that, prior to the legislation of 1852, the money of the wife, held by her at the time of her marriage, was vested absolutely in her husband by the marriage, and might be disposed of by him at his pleasure, and that if such money were delivered by her to him, upon his promise to invest it in land for her and in her name, such promise was without consideration and invalid, and that, if reduction to possession were necessary, his taking and holding the title to such land in his own name was an effectual reduction into possession.

These cases hold that there was no resulting trust in favor of the wife under such circumstances, because, as the law then stood, the money was not hers. But, prior to 1852, a woman might be the owner of money, which would not upon marriage become her husband's, as where it was settled upon her to her sole and separate use, or where she held it as trustee. To such cases, and to all cases where the evidence shows that the money remained the property of the wife notwithstanding the marriage, the cases of *Waldron* v. *Sanders* and *Wester-field* v. *Kimmer, supra,* do not apply.

If there were nothing in the case at bar except the facts that the husband, prior to 1852, bought a tract of land and paid for it, one-half with his own money, and the other half with money which his wife had at the time of their marriage, and had afterwards delivered to him upon his promise to invest it in land for her, and that he, in violation of the promise, had taken the deed for the land in his own name, the cases above cited would be decisive against the existence of any trust in favor of the wife.

But the evidence shows much more than this. It shows that when this husband and wife came to Indiana, in 1838, they each had $500. It was possible even then for a wife to hold property separate from her husband. It is not expressly shown how the property of this wife was held, except that she derived it as a daughter and as a widow, and probably held some of it in trust for her children, but, conceding that the mere fact that the money was hers at the time of the marriage authorizes the presumption that by the marriage it became her husband's, the evidence shows very clearly that he never made any claim to the money, or asserted any right to it. He never spoke of it in any other way than as his wife's money. He stated to a great many witnesses, at many different times, that the money paid for the land was $1,000, of which $500 was the money of his wife.

Mrs. Jane Rosell testified : "Mrs. Radcliff collected in her money about the time she went to Indiana. They both said

they put their money together and bought land. He said that her money and his had helped to purchase the land, and that the land was as much hers as his."

Catherine Duncan testified : "I heard them both say they had bought land with the money. He said she put in $500. He said her money had helped pay for that land. He said his wife's money had helped pay for that home."

William Mabee testified : "He said that when they came to Indiana he had $500, and his wife had $500, and that they bought the home place there with that money ; and again he said that he and Nancy had each furnished $500 to buy the home farm."

Mrs. Schofield testified : "I heard them both say they had bought the home farm in partnership ; that one had put in just as much as the other."

Mrs. Ann Ulery testified : "They said they each had $500, and he said she had put in as much as he had."

Six other witnesses testified to the same effect, and this mass of testimony was not contradicted by a single witness. Here were statements made by Radford at many different times, beginning a year or two after the marriage and ending quite recently, and there is no evidence at all tending to show that the money was not Mrs. Radcliff's money, except the mere fact of the marriage.

But, as already suggested, a wife, prior to 1852, might have money of her own notwithstanding her marriage, and although, in the absence of evidence, the presumption would be that money held by the wife before marriage was vested in the husband by the marriage, yet the testimony above referred to clearly rebuts such a presumption, and shows that the money in controversy was not the husband's money, but belonged to his wife, and also shows that one-half the land belonged to the wife. The demurrer to the evidence admitted all the facts and all the inferences which a jury might rightfully have made from the testimony. The controlling facts, thus admitted, are, that one-half of the money paid was the

wife's money, and not the money of the husband, and that she was the owner of half the land; that it was " as much hers as his; " that she paid $500 of the money and he paid the other $500.

Then, the only question is, did a trust arise in equity, prior to 1852, in favor of the person whose money paid for land, the title to which was taken in the name of another? Undoubtedly it did. *Elliott* v. *Armstrong*, 2 Blackf. 198; *Blair* v. *Bass*, 4 Blackf. 539; *Jenison* v. *Graves*, 2 Blackf. 440. These cases all hold that if A. purchased land with B.'s money, and took the conveyance in his own name, he held the land in trust for B. There is no better evidence against a man than his own declarations continuously reiterated throughout manhood and age for more than thirty years.

It can not be said that the demurrer to the evidence should have been sustained for the reason that the evidence does not sustain the complaint; the evidence does sustain the complaint.

The petition for a rehearing claims also that the judgment ought to be reversed because it was for too much land; but it was for the quantity of land demanded in the complaint, and there was no objection made to the judgment in the court below either as to form or substance. *Smith* v. *Tatman*, 71 Ind. 171; *Ingel* v. *Scott*, 86 Ind. 518.

The petition for a rehearing ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled.
Filed June 27, 1884.