No. 12,089.

## GRAY, GUARDIAN, *v.* TURLEY ET AL.

CONVEYANCE.—*Avoidance.*—*Insanity.*—*Notice.*—*Innocent Purchaser.*—A conveyance made by an insane person may be avoided, even as against a third person who purchased for full value and without actual notice of the mental disability, as a purchaser is affected with constructive notice of the incapacity of his grantors to convey.

SAME.—*Insane Wife.*—*Secret Trust.*— *When Conveyance can not be Avoided.*— *Judgment.*—But where a husband purchases land with money belonging to his wife, an insane woman, and takes the legal title in his own name,. whereby a trust results in favor of the wife, a conveyance thereof, in which she joins, can not, under section 2970, R. S. 1881, be avoided as against a subsequent purchaser for value and without notice of her mental incapacity; but, being insane when she joined in the conveyance, her rights as wife are not affected thereby, nor are they barred by a judgment in an action in which her right to recover the land as owner is denied.

From the Howard Circuit Court.

*C. E. Hendry, D. A. Woods, A. C. Bennett, R. Vail* and *F. Cooper,* for appellant.

*M. Bell* and *W. C. Purdum,* for appellees.

MITCHELL, J.—This suit was brought by the guardian of Catharine Baker, a person of unsound mind, to set aside a. deed of conveyance for a certain eighty-acre tract of land in Howard county, by which deed it is alleged.the insane ward became dispossessed of lands to which she had the equitable title.

The special findings of the court exhibit the following facts: Catharine Baker was, and still is, the wife of Levi Baker. In 1865 Levi Baker came into possession of twelve hundred dollars, which belonged to his wife. In November of that year, he purchased the tract of land in controversy for the consideration of fourteen hundred and forty dollars, paying thereon the twelve hundred dollars belonging to his wife. Baker took the title to the land in his own name. This fact was made known to his wife, but she was insane at the time, and neither gave nor refused consent. The deed to

Baker was duly recorded. In 1870 Baker and wife conveyed the land to Nathan Patty, the purchase-price being twelve hundred dollars. Patty assumed a four hundred dollar mortgage given by Baker and wife, part of which was for the unpaid purchase-price. For the balance he gave his notes, which were, as part of the same transaction, traded by Baker for thirty acres of land, the title to which he took in his own name. Patty knew at the time the deed was made to him by Baker and wife, that Mrs. Baker was insane, and that her money was used in purchasing the land in dispute. In September, 1874, Patty sold the land to John Turley for twenty-six hundred dollars, and conveyed it to him by warranty deed. At the time Turley took the conveyance from Patty,. he had notice that Mrs. Baker's money was invested in the land, and that she was of unsound mind when she joined her husband in the conveyance to Patty.

In October, 1880, John Turley and wife conveyed, by warranty deed, for a valuable consideration, to Benjamin P. Turley, who, in a few days thereafter, conveyed the land in like manner to the wife of John Turley. She held the legal title at the time suit was commenced.

The finding is silent upon the subject of notice to Benjamin P. Turley concerning the mental condition or equitable rights of Mrs. Baker.

The court found that Mrs. Turley paid a valuable consideration for the land, without any knowledge of the mental infirmity of Mrs. Baker, and without notice of her equitable rights growing out of the fact that her money was invested in the land. In June, 1880, prior to the conveyance to Turley's wife, Mrs. Baker was judicially declared to be a person of unsound mind, and Mr. Gray was appointed her guardian. He afterwards notified all the parties of his disaffirmance of the several conveyances, and demanded a reconveyance of the land to his ward.

Upon the foregoing facts the court stated conclusions of law, to the effect that Benjamin P. Turley and Mrs. John

Turley were innocent purchasers of the land in controversy, for value, and that the plaintiff, as the guardian of Mrs. Baker, was not entitled to the relief prayed.

The only question here relates to the propriety of the conclusions of law upon the facts stated. It may be remarked that while the special finding of facts makes it clear that twelve hundred dollars of Mrs. Baker's money was invested in the land, it does not clearly appear who paid the other two hundred and fifty dollars of the purchase-price, which was fourteen hundred and fifty. It is found that Patty assumed the payment of a mortgage for four hundred dollars, given by Baker and wife to one Gibbs, on the day of the sale to Patty, and that this sum was a debt due from Baker to one Fickle, and that it was part of the purchase-price due on the land. Baker purchased the land for fourteen hundred and fifty dollars, and paid twelve hundred dollars belonging to his wife. It may be assumed that the four hundred dollar mortgage to Gibbs was for the difference between the purchase-price and the amount paid, with the interest accumulated at the time Baker sold to Patty.

So far as Patty and John Turley are concerned, both are found to have had such notice of the unsoundness of mind of Mrs. Baker, and of her equitable title to the land at the time it was conveyed to them respectively, as to have effectually precluded either from asserting any rights, in a court of equity, as innocent purchasers. Having knowledge that the money of Mrs. Baker was invested in the land, and that she was a person of unsound mind, and incapable of consenting to such investment, or of joining in a conveyance, they perpetrated a fraud upon her when they accepted a conveyance from her husband, in which she had no capacity to join. As to them the conveyances did not affect her rights in any respect. They simply became trustees for the unfortunate woman, to the same extent, and with the same rights, as her husband had before he made the conveyance.

The special finding shows, however, that John Turley,

while so holding the title, conveyed the land to Benjamin P. Turley, for a valuable consideration, and that the latter conveyed it soon after to the wife of John Turley, who, as the court finds, was a purchaser for full value without notice.

The appellant excepted to the conclusions of law and moved for judgment on the special finding of facts, without moving for a new trial. This was equivalent to an assertion that the facts were correctly found, and it is upon that theory the case must now proceed.

We assent to the proposition, that the contracts and deeds of infants, and insane persons, are in all substantial respects parallel. Conveyances made by such persons may be avoided, unless they are afterwards ratified by the grantors, at a time when they have the capacity to ratify. This is so even though the land conveyed may have come into the possession of a third person, who purchased for full value, and without notice of the mental infirmity or legal disability of the grantor, on account of whose insanity the deed is assailed. Persons are affected with constructive notice of the incapacity to convey of those through whom they claim title.

The policy of the law is to afford such protection to persons of unsound mind as their unfortunate condition requires, without permitting them to avoid paying for actual benefits rendered to them by others in good faith. *Hall* v. *Butterfield*, 59 N. H. 354 (47 Am. R. 209); *Physio-Medical College* v. *Wilkinson*, 108 Ind. 314. This question was so thoroughly considered in the recent case of *Hull* v. *Louth*, 109 Ind. 315, and the authorities there cited, that it would serve no useful purpose to elaborate further.

If the title to the land in controversy had stood in the name of the appellant's ward, at the time the conveyance was made to Patty, the authorities fully support the proposition that the subsequent conveyances, even to one who paid full value without notice, would present no obstacle to the recovery of the land.

The element which distinguishes the case under consideration, from the cases referred to, grows out of the fact that the legal title to the land in controversy was at the time of the conveyance to Patty in Levi Baker. Whatever title Mrs. Baker had in the land, resulted from the fact that her husband paid for it with her money, she having no capacity to know or consent to the transaction. Her right was, therefore, purely equitable.

The facts present the ordinary case of a husband, who, without his wife's consent, invests her money in real estate, and takes the title in his own name without her knowledge. In such a case, the husband becomes a trustee for the wife, and a court of equity will follow the trust and protect it for the benefit of the wife, so long as the trust property can be reached in the hands of a person who is either a volunteer, or is affected with notice of the trust. *Paulus* v. *Latta*, 93 Ind. 34; *Radcliff* v. *Radford*, 96 Ind. 482; *Mitchell* v. *Colglazier*, 106 Ind. 464.

Where a person, who occupies a fiduciary relation to another, purchases property with fiduciary funds, and takes the title in his own name, a trust will result in favor of the person whose funds are thus employed, and this is so whether the person be an infant, insane, or any other, toward whom the purchaser at the time stood in a relation of trust. Bispham Eq., section 86; Perry Trusts, section 127.

Conceding that the husband of the insane woman, and all others who accepted conveyances from him, with notice, became trustees for her benefit, the question still remains, can the trust be enforced against a purchaser for value without notice? If it can, it must be because the fact that the *cestui que trust* was insane, takes it out of the ordinary rule. The statute concerning trusts (section 2970, R. S. 1881) provides, in substance, that no trust, whether implied or created, shall defeat the title of a purchaser for a valuable consideration without notice.

The purpose of this statute was to afford protection to

good-faith purchasers against all secret trusts, and its opera-
tion is not controlled or limited by the insanity, infancy, or
other disability of the *cestui que trust. Paulus* v. *Latta, su-
pra; Milner* v. *Hyland,* 77 Ind. 458; *Rooker* v. *Rooker,* 75
Ind. 571; *Gifford* v. *Bennett,* 75 Ind. 528; Perry Trusts,
sections 218, 828.

In such a case, the equities being equal, the legal title will
prevail. Thus, in *Turner* v. *Petigrew,* 6 Humph. 438, a
trustee of certain infants sold property to which he held the
legal title, the purchaser paying value without notice, it was
held, notwithstanding the trustee took the title in violation
of his duty, that the infants could not recover.

The land in dispute is, therefore, to be regarded, in the
hands of an innocent purchaser, precisely as if it had actually
been owned by Levi Baker, and the rights of Mrs. Baker are
subject to the law regulating conveyances of lands belonging
to husbands, whose wives joining therein may afterwards be
shown to have been insane at the time of such conveyance.
Having sued as owner, the judgment in this case will not bar
her rights as wife. *Bumb* v. *Gard,* 107 Ind. 575.

The judgment is affirmed, with costs.

Filed March 31, 1887.