INTER-OCEAN CASUALTY COMPANY *v.* WILKINS.

[No. 14,147. Filed July 26, 1932. Rehearing denied October 27, 1932. Transfer denied March 17, 1933.]

232

*Morton O. Embree* and *Charles O. Baltzell,* for appellant.

*Sanford Trippet, Douglas H. McDonald, T. Morton McDonald, Espencheid & Espencheid,* for appellee.

BRIDWELL, J.—Appellee brought this action on an insurance policy issued by appellant to James R. Wilkins, wherein appellee was named as beneficiary, and which policy (among other provisions) insured against the effects resulting directly and exclusively of all other causes from bodily injuries sustained during the life of the policy, solely through external, violent and accidental means and which provided that if the death of the insured should result solely from such injury within one hundred and twenty days from the date of the accident the appel-

lant would pay to the beneficiary the principal sum of $3,000.00.

The complaint was in one paragraph; appellant's answer thereto was in four paragraphs, including a general denial; appellee's reply to the second paragraph of answer was in two paragraphs, her reply to the third paragraph of answer was in three paragraphs, and to the fourth paragraph of answer she filed a reply in two paragraphs. One paragraph of each reply was in general denial. The sufficiency of each affirmative paragraph of reply was questioned by a demurrer. The demurrers were each overruled and appellant excepted to each ruling.

The case was tried with a jury which returned a verdict in favor of appellee for $3,330.00. Appellant duly filed its motion for a new trial which was overruled and an exception taken. Judgment on the verdict followed and from such judgment this appeal is prosecuted.

The errors assigned and relied upon for reversal are as follows: (1) The court erred in overruling the demurrer of the appellant to the second paragraph of appellee's reply to the second paragraph of appellant's answer to the complaint. (2) The court erred in overruling the demurrer of the appellant to the second paragraph of appellee's reply to the third paragraph of appellant's answer to the complaint. (3) The court erred in overruling the demurrer of the appellant to the third paragraph of appellee's reply to the third paragraph of appellant's answer to the complaint. (4) The court erred in overruling the demurrer of the appellant to the second paragraph of appellee's reply to the fourth paragraph of appellant's answer to the complaint. (5) The court erred in overruling appellant's motion for a new trial.

The complaint alleges in substance that the appellant is a corporation engaged in insuring persons against death and injury by accident; that on December 25, 1925, in consideration of the payment of certain stated monthly

premiums appellant executed its policy, whereby it insured one James R. Wilkins, beginning at noon on said day, and to continue so long as said Wilkins should pay the said monthly premiums; that by said policy appellant promised, in the event of accidental bodily injuries occurring to said insured, and resulting in the death of said Wilkins, within one hundred and twenty days from the date of the accident, caused solely through external, violent and accidental means, to pay to appellee, the wife of said insured, the sum of $3,000.00; that on the 23rd day of September, 1927, and while said policy was in full force and effect, the said James R. Wilkins received accidental bodily injuries, solely through external, violent and accidental means, which directly and exclusively of all other causes, produced his death on September 30, 1927; that on the night of September 22, 1927, the said Wilkins, while in the discharge of the duties of his employment as a car inspector for the Southern Railway Company in its railroad yards at Princeton, Indiana, was suddenly and violently caught and squeezed between two freight train cabooses while cutting out the yard air-brake test line from a freight train in said yards; that the bodily injuries thus received caused his death; that the said James R. Wilkins and appellee each performed all of the conditions of said policy to be by them or either of them performed; that appellant failed and refused to pay said policy and that the sum of $3,000.00 is long since past due and unpaid, and by reason of unreasonable delay in the payment due, appellee is entitled to recover interest, etc. A copy of the policy sued on is made a part of the complaint.

The defense asserted in the second paragraph of answer is based upon the alleged failure to give notice of injury as required by the policy, and the affirmative reply thereto pleads facts contended by appellee to be sufficient to constitute an estoppel, and a waiver of any

compliance with the provisions of the policy set out in said paragraph of answer.

This answer admits the issuance of the policy, the payment of all premiums thereon and the death of James R. Wilkins on September 30, 1927. It alleges that the cause of action set out in the complaint is based upon the alleged fact that death was caused by an accident inflicted upon said James R. Wilkins on September 23, 1927; that appellant received no notice whatever of said alleged accident until the 5th day of November, 1927, and by reason thereof no liability results from the alleged accident and the subsequent death therefrom. The provisions of the policy set out in said answer are as follows:

"Written notice of injury or of sickness on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury, or within ten days after commencement of disability from such sickness.

"In event of accidental death immediate notice thereof must be given to the company.

"Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the company at Cincinnati, Ohio, or to any authorized agent of the company, with particulars sufficient to identify the insured, shall be deemed to be notice to the company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

Appellee in her second paragraph of reply to this paragraph of answer averred that appellant, with full knowledge at all times as to all provisions of the policy, and after being duly notified, on or about November 4, 1927, of the accidental injury sustained by said insured and of his subsequent death resulting from said injuries, ac-

cepted said notice and thereafter requested of appellee further and additional proofs of such accident and the injuries resulting therefrom; that in compliance with said request appellee, at much trouble and expense, did procure and furnish to appellant additional affidavits and proofs in support of her claim; that appellant thereafter, on or about December 17, 1927, after considering said proofs and the claim of appellee, denied all liability under said policy solely and wholly upon the ground that said death was not due to any accidental bodily injuries, and notified appellee of its denial of liability under said policy solely on said ground. That by reason of the foregoing facts appellant is estopped from setting up lack of notice as a defense, and has wholly waived compliance with the provisions of said policy set up by said second paragraph of answer.

The overruling of its demurrer to this reply is the first alleged error assigned, presented, and relied upon for reversal by appellant.

The second paragraph of answer is based upon the theory that the failure to give notice of the alleged injury within twenty days after the alleged accident causing the injury bars any right of the appellee to recover on the policy in the absence of estoppel or waiver.

We must first determine whether the provisions of the policy relied upon and set out in said answer required that written notice of injury be given to appellant within twenty days after the date of the accident causing such injury where the complaint, as here, is by the beneficiary for the recovery of the principal sum provided by the policy to be paid in case of death of the insured from such injury within one hundred and twenty days from the date of the accident.

The provisions of the policy concerning notice are to some extent uncertain. In event of accidental death "immediate notice" is required. Where claim is based

on injury by accident a notice within 20 days after the accident. Where for diability from sickness within 10 days after commencement of disability. No special provision is made for notice of death of insured resulting from accident where such death does not immediately follow the accident but occurs within the period of time fixed by the policy for liability on account of death. There is a provision in the policy providing that: "Strict compliance on the part of the insured and beneficiary with all the provisions of this policy is a condition precedent to recovery hereunder, and any failure in this respect shall forfeit to the company all right to any indemnity."

It is a well established principle that courts will construe a contract of insurance liberally, so as to give it effect rather than to make it void, and conditions which create forfeitures will be construed most strongly against the insurer. *Northwestern Mutual Life Ins. Co.* v. *Hazlett* (1886), 105 Ind. 212, 4 N. E. 582, 55 Am. Rep. 192; *National Live Stock Ins. Co.* v. *Owens* (1916), 63 Ind. App. 70, 113 N. E. 1024, 1027; *Maxwell* v. *Springfield, etc., Ins. Co.* (1920), 73 Ind. App. 251, 125 N. E. 645; *Firemans Ins. Co.* v. *Savery* (1924), 88 Ind. App. 296, 143 N. E. 612; *Masonic Acc. Ins. Co.* v. *Jackson* (1929), 200 Ind. 472, 164 N. E. 628, 61 A. L. R. 840.

Appellee could not know whether she had a claim until after her husband's death and she was not required to give notice of the accident on account of which her claim arose before she knew whether or not it would come into existence. Her claim was under the death clause and not under the loss of time clause. The failure of the insured to give notice of injury within twenty days after the date of the accident causing the injury, should not be held to preclude appellee from her rights as beneficiary where death resulted

from the injury within the time fixed by the policy and notice was given thereafter, especially where the policy provides that: "Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as reasonably possible." The answer discloses that notice was given and does not allege a failure to give notice "as soon as reasonably possible." We can not say as a matter of law that because the answer avers that the complaint alleges death on September 30, 1927, as a result of injury inflicted by accident on September 23, 1927, and further avers that no notice was received prior to November 5, 1927, that under the provisions of the policy pleaded in the answer the failure to give notice within 20 days after the accident would forfeit to the company appellee's right to indemnity.

It is insisted that the second paragraph of reply to the second paragraph of answer shows on its face that the denial of liability by the appellant was made at a time after the time for giving notice of the alleged injury had expired and that for this reason the demurrer thereto should have been sustained. Had the failure to give notice within 20 days worked a forfeiture of the beneficiary's rights this contention would prevail, as a refusal to pay on a wholly different ground, *made after the time* that notice must be given in order to enforce any right of recovery, does not constitute a waiver or prevent a defense on the grounds that notice was not given as required by the policy. *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St. Rep. 232, 6 Ann. Cas. 551; *Fidelity & Casualty Co.* v. *Sanders* (1904), 32 Ind. App. 448, 70 N. E. 167.

The second paragraph of answer not alleging a failure to give notice as soon as reasonably possible does not

state a defense to the complaint. There is no available error in overruling a demurrer to a reply to an insufficient answer. *Aetna Life Ins. Co.* v. *Bockting, Gdn.* (1906), 39 Ind. App. 586, 79 N. E. 524; *Beecher* v. *Peru Trust Co.* (1912), 49 Ind. App. 184, 97 N. E. 23; *Majestic Life, etc., Co.* v. *Tuttle* (1914), 58 Ind. App. 98, 107 N. E. 22; *Peden* v. *Cavins* (1893), 134 Ind. 494, 34 N. E. 7, 39 Am. St. Rep. 276.

Appellant's third paragraph of answer admits the issuance of the policy in suit, the payment of all premiums due thereon and the death of said James R. Wilkins on September 30, 1927. It then avers that by the terms of said policy any money due on the same upon the death of James R. Wilkins was due and payable to his wife, this appellee. It is further alleged: "That on the 29th day of October, 1927, this defendant made settlement with the said plaintiff, paying her in full for any and all liability under said policy as set out in said complaint, and that at the time of receiving said payment the said plaintiff executed a receipt, which said receipt is in words and figures as follows, to wit:

"Amount of claim.................................................$118.90
Premium .................................................$
Balance .................................................$
Date of accident or illness 9/25, 1927.

'Receipt and Endorsement.

"Received above balance being in full satisfaction, compromise and final settlement of all claims accrued or to accrue against Inter-Ocean Casualty Co.,

 Cincinnati, Ohio, Policy No. 53835.

"On account of any accident already sustained and any disease and any illness heretofore contracted.

 Lucy Wilkins.

Claimant will sign and endorse above this line.'

"That by reason of the facts as aforesaid any liability on the part of the defendant to the plaintiff herein has

been fully paid and satisfied long before the filing of the complaint herein."

Appellee's second paragraph of reply to this third paragraph of answer alleges in substance that the payment of said sum of $118.90 was payment required under the terms of the policy for six days sickness disability, three days hospital confinement, and fatal sickness expenses of $100.00; that it was not for the accidental death of said insured caused from bodily injuries sustained by him through external, violent or accidental means; that the receipt set forth in said answer was endorsed on the back of a check issued to her in payment for the amount due for the fatal illness of the decedent and for no other purpose whatever; that said check was transmitted and delivered to appellee by and through the United States mail and was enclosed with and accompanied by a letter which purported to set forth the items of the claim under the policy, which said check was intended to pay and did not include any item of claim for accidental death; that said check and the proceeds thereof were received, accepted, and retained in satisfaction only of the items set forth in said letter and not otherwise; that said receipt so far as it attempted or sought to be a release or discharge from liability for the death of said insured was given without any consideration whatever. The letter with which the check was transmitted according to the averments of the reply, is set forth in full in said reply and omitting its formal parts is as follows: "We have received the final claim blank on account of your husband's disability and accordingly we have admitted your claim to payment for 6 days, allowing you $12.60. We have also included $6.30 covering the three days' Hospital confinement and $100.00 fatal sickness expense as provided by his policy, which makes a total of $118.90. You will find check enclosed herewith for that amount. We are attaching a release which we will ask that you

kindly sign and return, together with policy No. 53835."
The answer does not allege the surrender of the policy
at any time, nor that any controversy as to the amount
due under its provisions existed at the time of the deliv-
ery and execution of the instrument signed by appellee.

Appellant contends that since its third paragraph of
answer pleads a receipt and release purporting to be "in
full satisfaction, compromise and final settlement of all
claims" under the policy, and this reply thereto avers
facts seeking to alter, vary and change the unambiguous
language of a written instrument by pleading extrinsic
evidence, and contains no averment of recission or offer
to rescind and no averment in respect to tendering back
the money received in settlement, and makes no attempt
to raise any issue of fraud or mistake of fact, its demur-
rer to said reply should have been sustained.

We are of the opinion that the consideration expressed
in the written instrument set out in said answer is not
contractual, but is manifestly a recital of the
amount of the consideration. The rule that ex-
trinsic evidence cannot be resorted to for the pur-
pose of varying the terms of a written instrument, sought
to be invoked by appellant, is applicable only where the
contract is complete on its face and where the considera-
tion is contractual. The actual consideration, where not
contractual, is open to inquiry and proof. *Illinois Cen-
tral R. R. Co.* v. *Fairchild* (1910), 48 Ind. App. 300, 91
N. E. 836; *Stewart* v. *Chicago, etc., Railroad* (1895), 141
Ind. 55, 40 N. E. 67; *Pickett* v. *Green* (1889), 120 Ind.
584, 22 N. E. 737; *Carter* v. *Richart* (1916), 65 Ind. App.
255, 114 N. E. 110. If, as alleged in said reply, the sum
paid to appellee was in discharge of certain specific obli-
gations other than the one sued upon there was no duty
to return the consideration paid. There was no error in
overruling appellant's demurrer to this paragraph of
reply.

Appellee's third paragraph of reply to appellant's third paragraph of answer alleges all the facts averred in said second paragraph of reply to such answer concerning the payment of the $118.90 by appellant to appellee, its acceptance by appellee and the consideration for which the payment was made. It also avers that appellee, at the request of appellant made after the issuance and receipt of the check involved, furnished to appellant additional affidavits and proofs in support of the claim upon which this suit is brought and that appellant thereafter denied all liability solely and wholly upon the ground that death of insured was not due to any accidental bodily injuries. The sufficiency of this reply is questioned upon the same grounds presented as to the second paragraph of reply to this third paragraph of answer. The court did not err in overruling the demurrer thereto.

Appellant's fourth paragraph of answer combines in one paragraph the facts averred in its second and third paragraphs of answer, and appellee's second paragraph of reply thereto combines the facts averred in her affirmative replies to the second and third paragraphs of answer. The alleged error in the overruling of the demurrer to this second paragraph of reply presents the same questions heretofore discussed, and such action was not erroneous.

It is contended by appellant that its motion for a new trial should have been sustained. The reasons for a new trial assigned in such motion are that the verdict of the jury is not sustained by sufficient evidence; that it is contrary to law; that the court erred in the admission of certain evidence and in rejecting offered testimony; that the court erred in the giving of certain instructions and in the refusal to give certain others; that the court erred in overruling the motion of appellant to set aside the submission of the cause to the jury because of the misconduct of one of the counsel for appellee in stating to

the jury in his opening statement that the decedent said to the plaintiff, upon arriving home on the day of the alleged accident, and approximately three hours after the alleged accident, in substance, that he had come very near getting killed.

The conduct of the opening statement is a matter much within the discretion of the trial court, and it is only where there is an abuse of discretion that appellate courts will interfere. See *Adams* v. *State* (1912), 179 Ind. 44, 99 N. E. 483, and cases there cited. Here the trial court, upon overruling the motion to set aside the submission of the case to the jury, informed said jury "that the statement made by counsel was not to be considered as evidence, as any statement made by counsel is not evidence." Appellant requested no further admonition or instruction. Upon a consideration of the matter as presented by appellant's bill of exceptions relative thereto, we are of the opinion that there was no abuse of discretion on the part of the trial court and the action complained of does not justify a reversal.

Error is claimed in the admission of evidence, but the questions sought to be raised are not presented. The motion for a new trial, in order to present any question for review, must set out, at least, the substance of the question asked, the objection made and the answer given, in order that it may be determined as to whether harmful error exists without searching the record. In the instant case the motion fails to do this, but in each reason set forth in said motion, it is merely stated that "the court erred in permitting a named witness for the plaintiff to testify, over the objection of the defendant, to certain facts. Neither the question nor its substance, the objection made nor the grounds for such objection, appear. The admission of certain exhibits in evidence is also questioned but the motion does not disclose what any exhibit read in evidence purported to

be, nor upon what grounds of objection made it should have been excluded. *Greer* v. *State* (1929), 201 Ind. 386, 168 N. E. 581; *Kenwood Tire Co.* v. *Speckman* (1931), 92 Ind. App. 419, 176 N. E. 29; *Eva* v. *State* (1932), 203 Ind. 340, 180 N. E. 183. It is also assigned as a cause for a new trial that the court erred in refusing to permit one witness for the defendant to testify on direct examination that at no time during his last sickness did the decedent say anything to the witness on the subject of having been injured; and erred in refusing to permit another witness for the defendant to testify on direct examination, that at no time during his last sickness did the decedent say anything to the witness about his having been struck on the abdomen. No question seeking to elicit this information is set forth nor given in substance; it is not stated what objection, if any, was made, nor does the motion disclose that an offer to prove was made. The exclusion of evidence on the examination in chief is not available as error, unless the party makes an offer to prove the facts which he assumes his question will elicit. *Piggly-Wiggly Stores* v. *Lowenstein* (1925), 197 Ind. 62, 147 N. E. 771; *Fowler* v. *Newsom* (1909), 174 Ind. 104, 90 N. E. 9, and cases there cited.

Appellant earnestly contends that the verdict of the jury is not sustained by sufficient evidence. Our attention is directed to the fact that there was no eye witness to any accident and that the verdict is based on circumstantial evidence only. It is insisted that the first questions with which this court is confronted are: "Was there any accident? Was there any injury? Did the death of the insured result from such accident and injury, if any?" All these questions, however, have been answered in the affirmative by the jury and its verdict is binding on this court where there is any competent evidence upon which the same may rest.

There is evidence to prove that the deceased was em-

ployed as a car inspector in railroad yards at Princeton, Indiana, at the time of the claimed accident and injury; that one of the duties of his employment was to disconnect the air test plant from trains being made up in said yards upon a signal of one long blast of the whistle from a locomotive attached to a train; that on the morning of September 23, 1927, deceased was in the caboose of a freight train already connected to the air test plant; that the signal to disconnect was given and deceased left the caboose as soon as the signal was sounded carrying a lighted lantern; that the caboose of another train that was being made up in said yards was next to the caboose from which said decedent alighted; that in order to disconnect said plant it was necessary to go between the cabooses and turn an angle-cock to cut out the yard test plant, and that the distance deceased would have to travel to do so was nine to twelve feet; that within half a minute from the time deceased left the caboose a cut of cars was kicked in from the west knocking said caboose some four or five feet; that within a minute deceased returned to said caboose, seemed scared, excited and pale; his lantern was out, he sat down on the bunk and sat there in a dazed condition, leaning over and looking down and said "I came very near getting killed just now" and "I feel sick;" that the air test plant was connected when the signal to disconnect was given and was cut out immediately after such signal and that deceased was the only car inspector on duty at the time; that right after the whistle signal was given deceased left the caboose getting off on the south side thereof; that after returning to said caboose in the condition heretofore stated, he again left the caboose getting off on the north side and went between the two cabooses and turned the valve on the end of the hose that leads to the air plant and at this time did not reach over the draw bar to turn the angle-cock located on the south side of the caboose;

that some three or four hours after deceased first left the caboose on this morning, he reached home, and showed to his wife "a red angry streak on his abdomen;" that seven days thereafter he died from peritonitis caused by appendicitis.

There was also evidence to the following effect: About seven years before his last illness deceased had been operated on for appendicitis; from the time of this operation until his last sickness he appeared to be a strong, healthy man, and there were no further indications of any trouble from his appendix; for three years immediately prior to his death he worked as car inspector in the railroad yards, his hours of labor being from 11:00 o'clock P. M. to 7:00 o'clock A. M., and during this period of time did not miss more than one night of work. Approximately two years after his death and burial his body was exhumed and an autopsy held; this autopsy disclosed that the appendix had not been removed and was in an abnormal condition due to a previously inflamed condition and contained three hard stonelike masses or fecoliths; that the wall of the appendix near where it was attached to the large bowel was greatly thickened, and the thickening continued for a distance of one inch or more, narrowing the opening of the appendix. One of the medical witnesses, who helped with the autopsy, testified that a man having fecoliths in the appendix, such as were found in the appendix of Wilkins, might remain in a perfectly healthy condition for years and suffer no ill effects, if he received no blow in the region of the abdomen or appendix; that there is such a thing as traumatic appendicitis, and it is a condition brought about because of a blow over the abdominal region; that a sudden blow over the abdomen or a force suddenly exerted that will compress the contents of the abdomen forces the content of the bowel into the appendix; that if the appendix is not diseased it empties itself,

but in a diseased appendix the condition is entirely different; that the same force suddenly exerted over the abdomen would cause the intestinal content to pass into the appendix as a closed organ; put the walls under a tension and the walls of the appendix are expanded; that in appendices in which there is a narrow constriction, and especially if there is a fecolith present, this fecal matter thus forced into the appendix can not get out; that this constitutes a condition which is called acute sudden obstruction of the appendix, and in cases in which a blow over the abdomen forces the content into the diseased appendix the trauma excites a sudden inflammation thereof; that the result is that there develops an acute inflammation in the distended portion of the appendix and this brings on peritonitis. It was the opinion of this witness that some sudden force applied over the abdomen excited an acute inflammation of the appendix of deceased which resulted in peritonitis. There is other medical testimony of like effect.

The policy sued upon insured against the "effects resulting directly and exclusively of all other causes from bodily injury sustained . . . solely through external, violent and accidental means." Appellant contends that, the evidence is insufficient to prove that death was due to bodily injury sustained solely through external, violent and accidental means, and insists that the uncontradicted evidence shows that the diseased condition of the appendix of the deceased was a contributing cause of death, and that because of this fact, there is no liability. We can not agree with this contention. In *Continental Casualty Co.* v. *Lloyd* (1905), 165 Ind. 52, 73 N. E. 824, 826, the liability under the policy was limited to "bodily injuries effected through external, violent and purely accidental causes—such injuries as shall, solely and independently of all other causes, necessarily result in death within ninety days." In discussing this clause

of that policy the court said: "The causes referred to in this class of instruments relate to proximate, and not remote causes. . . . When two or more causes contribute to an injury, where there is doubt, or the facts of a character that equally prudent persons would draw different conclusions therefrom, in such cases, which of the contributing causes is the efficient, dominant, proximate cause, is a question to be submitted to the jury." The case under discussion was one where the insured had fallen and death resulted from cerebral hemorrhage. An autopsy revealed the existence of a tumor surrounding the right middle cerebral artery, obscuring about two inches of the same, and it was contended that the plaintiff failed to make out her case because it was shown that death ensued partly from the diseased and weakened condition of the artery. In the course of its opinion the court further said: "And it makes no difference whether it (the jury) found that the cause closest the death was hemorrhage of the brain, or an organized blood clot within the walls of the cerebral artery. It had the right to find that the accidental fall was the cause that put his life in jeopardy, because it incited the fatal energy of the tumor, which was at least dormant, and would have remained so for an indefinite period, and, perhaps, until death from some other cause would have supervened. The tumor had impaired the resisting strength of the artery, but had not effected immediate danger to life. It was proper under the evidence for the jury to view the impairment as a condition, and not as a cause, and to find that the fall was the originating, efficient, direct, and proximate cause of death; that is, that the fall set in motion a force that progressed upon present existing conditions in natural usual sequence to effect the fatal result." See also, *Kokomo Life, etc., Co.* v. *Wolford* (1929), 90 Ind. App. 395, 167 N. E. 156; *Fairclough* v. *Casualty Co. of New York* (1924), 54 App.

D. C. 286, 297 Fed. 681; *Chicago, etc. Ry. Co.* v. *Whip-king* (1933), ante 167, 170 N. E. 548.

In the instant case we are of the opinion that under the evidence it was proper for the jury to conclude that the insured received bodily injury solely through external, violent and accidental means which set in motion a force that worked upon the then existing condition in a natural and usual sequence to effect the fatal result. We hold that the evidence is sufficient to sustain the verdict, and that it is not contrary to law.

We have examined and considered the instructions tendered by appellant and refused by the court, and the instructions given by the court to the jury, and find no reversible error in connection therewith. The questions presented have heretofore been discussed in this opinion and no good purpose would be served by the setting out of such instructions and a further discussion of the propositions involved.

Finding no reversible error, the judgment is affirmed.