BRUSH *v.* AMERICAN COFFEE HOUSE ET AL.

[No. 16,995. Filed October 20, 1942.]

*Earl Heffner*, of Indianapolis, for appellant.

*William E. Hart* and *White, Wright & Boleman*, all of Indianapolis, for appellees.

CURTIS, J.—The controlling facts in this case are stated in the finding and award of the full Industrial Board, from which we quote as follows:

"It is now found, by the Full Industrial Board of Indiana, that the plaintiff was in the employ of the defendant on April 23, 1941, at an average weekly wage in excess of $8.80 and less than $16.00; that on said day she sustained a personal injury caused by accident arising out of and in the course of her employment with the defendant; that thereafter on May 27, 1941, a Form 12 agreement was approved by the Industrial Board and pursuant thereto, the petitioner was paid compensation at the rate of $8.80 per week beginning May 1, 1941, during temporary total disability; that compensation by virtue of said agreement was paid petitioner up to July 24, 1941, on which said date compensation payments were stopped by defendant, the United States Fidelity & Guaranty Company, which was the compensation insurance carrier of the defendant American Coffee House; that thereafter on August 21, 1941, the defendant

American Coffee House, by and through its compensation insurance carrier United States Fidelity Company, filed a Form 14 alleging therein among other things that plaintiff's temporary total disability had a result of said accidental injury above referred to had ended.

"It is further found that thereafter the parties submitted a stipulation of all the facts in the case, stipulating that as a result of said accidental injury the plaintiff has sustained a permanent partial impairment to the leg below the knee of 16⅔%; that on said stipulation of facts an award was written by the Hearing Member.

"And now the Full Industrial Board, after hearing all the evidence in the case and being duly advised, finds against the plaintiff on her application filed with the Industrial Board on February 18, 1942, and finds that there was no mutual mistake of fact in the stipulation which the parties submitted and on which the award was based.

## "AWARD:

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED, by the Full Industrial Board of Indiana, that the award made in this case on September 18, 1941, be not set aside and that the plaintiff's petition is hereby denied in every respect."

From the above award the appellant prayed an appeal to this court, assigning among other things that the award of the full Industrial Board is contrary to law. This assignment is sufficient to present all of the errors sought to have reviewed. Under this assignment the appellant contends that there was a mutual mistake of fact between the parties at the time of and in the stipulation which they entered into, upon which the award was based, said mistake of fact being alleged to be that the appellant's injury has not yet reached a quiescent stage, and that her disability had not ended as stated in said stipulation and as found by the Indus-

trial Board. It is also contended that the board erred in refusing to permit each of two witnesses for the appellant to testify, they each being doctors who had examined the appellant some time after the stipulation was signed.

One of the main contentions of the appellant is that the evidence heard by the board is of such a conclusive character as to force a conclusion contrary to that reached by the board. The appellees agree that where the evidence is of such a conclusive character as to force a conclusion contrary to that of the board that the award will be reversed by this court, but contends that there was ample evidence before the board upon which it could make the finding and award which it made.

The appellees point to the testimony of William E. Jeffrey, who was the attorney for the appellant at the time the said stipulation was entered into and the award made, and summarizes his evidence as follows:

"I am an attorney. On September 15, 1941, I represented Madge Brush as her attorney. There had been a good deal of negotiation before we got here and we discussed the amount the insurance company would pay for all items, including taxi fares and other costs and tried to agree on some figure on behalf of Mrs. Brush. I insisted on payment of considerable more than we finally got. I discussed it with Mrs. Brush and her husband. I would try to get Mr. Hart to pay more, finally he made his final offer, $16\frac{2}{3}\%$ plus certain additional medical services, so much for taxi fares and one or two other things. We were working on sort of a lump sum. We decided to accept it. Mr. Hart and I came in here. I think Mr. Hart dictated some sort of agreement. Doctor Mumford was to be paid for an additional week or two of treatment. We talked it over as we went along and finally reached an agreement of $16\frac{2}{3}\%$ impairment plus

the other items. She finally said go ahead and take it. It was under my instruction from my client that I entered into the stipulation of fact in which the award was written. We knew what money we were to get. The award confirmed to the agreed state of facts. I have not got my copy with me but I read it over and read it over to Mrs. Brush, and it included what we finally agreed to come down to and accept, at least that was my conclusion. The check came to me. Called Mrs. Brush in the office, we went over it, and she signed the final receipt.

"CROSS-EXAMINATION.

"I had a copy of defendant's Form 14. I don't know if Form 14 said anything about impairment at that time. I read it at the time. I knew Dr. Mumford was an attending physician. I assume the insurance company furnished Dr. Mumford. I had talked to Dr. Mumford two or three times about it. He was not up here. There was no medical testimony incorporated in the stipulation before Mr. Hitch. When I came up here that day I was trying to get all I could for Mrs. Brush. I am not certain if she was in the court room. We had considerable discussion in the corridor outside of the door. She was somewhat lame that day. I received a copy of the award. The additional medical service set out in the award was for the injured ankle in question. Dr. Mumford's treatment extended beyond the award a week or two."

The member of the Industrial Board who heard the matter and entered the award upon the stipulation testified in substance, as shown by the summary in the appellees' brief, as follows:

"I am a member of the Industrial Board. I heard Case No. 30854, Madge Brush v. American Coffee House. It was submitted on a stipulation, by agreement of counsel for both sides. I don't know if plaintiff's attorney counselled with his client or not. Plaintiff never came to me with any complaint as to a mistake. The award was based on the stipulation of fact."

No objection is made by the appellant to the above summaries of the evidence. We agree with the appellees that there is ample evidence in the record to sustain the finding of the board that there was no mutual mistake of fact at the time the said stipulation was entered into and the award made, and that there is no showing whatever of any fraud in connection therewith.

In the oral argument of the case the appellant's attorney contended at length that the board erred in refusing to admit said testimony of the two doctors heretofore mentioned stating in his argument that an offer to prove was made in each case, and that the chairman of the board refused to allow the offer to prove to be made in the presence of the Industrial Board and ordered that if it be made, it be made by whispering the same to the reporter. It was done in this manner according to the statement of the appellant's attorney in his oral argument. The record made at the time the said ruling was made is not set out in the appellant's brief, and there is no offer to prove set out in either case nor any other sufficient steps shown to have been taken to present the alleged erroneous rulings on the offers to prove. See *State Storage, Inc.* v. *Scheper* (1932), 95 Ind. App. 157, 181 N. E. 385; also *Inter-Ocean Casualty Co.* v. *Wilkins* (1933), 96 Ind. App. 231, 182 N. E. 252. We would have no way of knowing what the offer contained except to go to the transcript of the evidence. This we need not do for the purpose of reversal. If the ruling of the board was made as stated by appellant's attorney, and if the chairman of the board ordered the offer to prove whispered to the reporter instead of made openly and orally to the board itself, in that event his said rulings were entirely erroneous in that respect and

cannot in any measure be approved, but there was no showing made that the offered evidence was material to the issues before the board.

Finding no reversible error, the award of the Industrial Board is affirmed.

NOTE.—Reported in 44 N. E. (2d) 202.