MATTHEWS *v.* ADONIRAM GRAND LODGE ETC.

[No. 18,963. Filed December 30, 1958. Rehearing denied February 2, 1959. Transfer denied March 24, 1959.]

*D. James Snodgrass* and *George M. Bowser,* both of Warsaw, for appellant.

*Tony Foster, Paul R. Summers, John R. Hiner, Bingham, Summers & Spilman,* all of Indianapolis, *Byron E. Kennedy* and *Rockhill, Vanderveer, Kennedy & Lee,* of Warsaw, for appellee.

COOPER, J.—This appeal is from an action wherein the appellee brought an action in two paragraphs against the appellant, Judd H. Matthews, in the Kos-

ciusko Circuit Court for possession of certain real property and the second paragraph seeking a judgment to quiet title thereto. The appellant herein filed a cross complaint to quiet title in himself.

The issues were properly formed by the appellant's answer to both paragraphs of appellee's complaint and by the appellee's answer to the appellant's cross complaint. Judgment was for appellee (plaintiff below) on both paragraphs and against appellant. The error assigned before us is the trial court's action in overruling the appellant's motion for a new trial.

The appellant's motion for a new trial, omitting the formal caption, is as follows:

"1. The decision of the court on plaintiff's complaint is not sustained by sufficient evidence, and is contrary to law.
"2. The decision of the court on defendant's cross-complaint is contrary to law."

Specifications 3, 4, 5, 6, 7, 8 and 9, and each subdivision thereof, relate to the admission, or exclusion, of certain evidence, both oral and written.

Due to the length of the motion for a new trial, we do not deem it necessary to set it forth in full, except what we have set out hereinbefore and specification No. 10, which is as follows:

"10. The decision of the court is not supported by sufficient evidence and is contrary to law."

The record before us reveals that the appellant's motion for a new trial relating to the admission and exclusion of certain exidence does not set forth the question, the objection and the ruling of the court thereon.

In many cases both the Supreme Court and our court have repeatedly held that to present error in the admission or exclusion of evidence, the motion for a new trial must set forth the question, objection, the ruling of the court and the answer, or

at least the substance thereof. *Ray* v. *State* (1954), 233 Ind. 495, 120 N. E. 2d 176; *Gernhart* v. *State* (1954), 233 Ind. 470, 120 N. E. 2d 265; *Altmeyer* v. *Norris* (1954), 124 Ind. App. 470, 119 N. E. 2d 31; *Hire* v. *Pinkerton* (1955), 126 Ind. App. 23, 127 N. E. 2d 244; *Henderson* v. *State* (1955), 235 Ind. 132, 131 N. E. 2d 326; *Highshew* v. *Kushto* (1956) (T. D. 1956), 126 Ind. App. 584, 131 N. E. 2d 652; §1812, Flanagan, Wiltrout & Hamilton's Indiana Trial and Appellate Practice.

Specification No. 4 asserts error in excluding a certain exhibit in evidence upon objection by the appellee.

It affirmatively appears that the appellant in his motion for a new trial does not state the grounds upon which the objection was based or the court's ruling thereon, and, is, therefore, subject to the same infirmities as are pointed out hereinabove. See *Mustafov* v. *Metropolitan Life Ins. Co.* (1955), 125 Ind. App. 388, 125 N. E. 2d 824; *Inter-Ocean Casualty Co.* v. *Wilkins* (1932) (T. D. 1933), 96 Ind. App. 231, 182 N. E. 252.

The appellant's motion for a new trial fails wholly to comply with the above-stated rule of law; therefore, no question is presented for our determination by the appellant's specifications Nos. 3, 4, 5, 6, 7, 8, 9 and each subdivision thereof. This leaves the only undisposed of specifications Nos. 1, 2 and 10 of the appellant's motion for a new trial, which, of course, requires a review and consideration of the evidence.

Some of the undisputed facts in the record before us reveal that the appellant and his brother, Webb, were the owners of the real estate involved, having purchased it in the mid-twenties; that they mortgaged the real estate to the Warsaw Building & Loan Association; that the mortgage was foreclosed on June 1,

1935; that the Sheriff's sale was had thereunder on June 29, 1935; that the Sheriff's Certificate of sale was assigned to Elmer E. Matthews on the same day; that the Sheriff's deed to Elmer E. Matthews was delivered to him on July 18, 1936; that the said Elmer E. Matthews died testate on the 6th day of February, 1940; and his will devised the real estate involved in this appeal to his sister, Margaret Matthews; that the said Margaret Matthews died testate on the 13th day of April, 1943, and her will devised the real estate herein to the appellee.

The appellant herein in his first paragraph of argument makes the following statement:

"The Appellee—Lodge brought this law suit, for possession of the real estate, and to quiet title thereto, against the Appellant; and the burden lay upon Appellee to prove its title herein, both legal and equitable. *Appellee made its prima facie case all right,* by simply showing an apparent chain of legal title to the Appellee from assignment of Sheriff's Certificate of Sale to Appellant's brother, Elmer Matthews, issuance of Sheriff's deed thereunder to Elmer, a general devise by Elmer to the sister Margaret, and thence by a general devise by Margaret to the Appellee." (Our emphasis.)

Thus, it is apparent that the appellant concedes that the appellee made a prima facie case by showing legal title in said appellee.

It is the general rule of law that the legal record title is the highest evidence of ownership and necessarily not easily defeated. *Sheets* v. *Stiefel* (1947), 117 Ind. App. 584, 74 N. E. 2d 921; *Philbin* v. *Carr* (1921) (T. D. 1921), 75 Ind. App. 560, 129 N. E. 19, 129 N. E. 706; *Norling* v. *Bailey* (1951), 121 Ind. App. 457, 459, 98 N. E. 2d 513.

Our court stated, among other things, in the case of *Philbin* v. *Carr, supra,* at pp. 581 and 582:

"In all civilized countries the subject of real estate titles is regarded as of sufficient public importance to justify state regulation. The legislature of our state long ago adopted regulatory measures on this subject, declared that all conveyances of land shall be by deed in writing, and prescribed a plan by which the title to every tract of land may be made a matter of public record. §3936 *et seq.* Burns 1914, §2915 *et seq.* R. S. 1881. The legislature has provided also the manner in which lands may be devised and wills recorded. §3112 *et seq.* Burns 1914, §2556 *et seq.* R. S. 1881. A title evidenced by conveyances, wills, decrees of court, and proof of heirship, is commonly called a *legal* title —in contradistinction to an *equitable* title. It is the policy of the law to protect land titles created in accordance with the plan prescribed by the legislature. In this connection it should be observed that a prominent feature of the statute of frauds and of the statute of trusts is that they serve effectively to safeguard legal titles. §§7462 *et seq.,* 4012 *et seq.* Burns 1914, §§4904 *et seq.,* 2969 *et seq.* R. S. 1881.

"A record title is the highest evidence of ownership, and is not easily defeated."

Furthermore, "right to possession of premises is presumed in favor of a person in whom the title is found . . . until a better right is shown; . . ." 28 C. J. S., Ejectment, §85, p. 958. See, also, *Klingler* v. *Ottinger* (1939), 216 Ind. 9, 15, 22 N. E. 2d 805.

It, therefore, necessarily follows that by the admissions made by the appellant as to the appellee making a prima facie case and the foregoing general rule of law applicable to the question of title and possession, the decision of the trial court is sustained by sufficient evidence and not contrary to law.

This answers the assigned specification No. 1 of the appellant's motion for a new trial and leaves only specifications No. 2 and No. 10 to be disposed of, which said specifications we have set out hereinbefore.

First, the appellant's cross complaint merely states that "he is the owner of the equitable title to the following described real estate . . ." It is the appellant's contention that "the purchase money for the sheriff's certificate was furnished by the appellant, Judd Matthews, with the understanding that Judd Matthews was the equitable owner of the property; that the trust is both express and resulting."

Notwithstanding the general rule of law that a complaint must proceed upon some definite theory (see the case of *Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co.* (1938), 104 Ind. App. 540, 547, 12 N. E. 2d 396,) it is apparent from the record that the appellant's cross complaint was framed and his cause of action grounded upon the theory that some type of a trust existed between the appellant and his deceased brother, Elmer Matthews. The issue made by the cross complaint was tried on this theory before the trial court, and the trial court's judgment infers that the appellant failed to prove his case on any theory.

It is the law in Indiana that when an attempt is made to impress a trust upon real property when legal title is held by another, that the burden of establishing said trust is upon the one asserting, or claiming the benefit of the trust, and this is especially so where the issue of the real property being allegedly held in trust was rendered by him. It is also well established that to constitute a trust, such as the appellant herein maintains, the terms thereof must be certainly and definitely established. *Costa et al.* v. *Costa et al.* (1953), 124 Ind. App. 128, 115 N. E. 2d 516; *Buller-*

*dick* v. *Miller* (1926), 85 Ind. App. 369, 152 N. E. 280.

Where as in this cause the appellant undertook the initial burden of proving that he was the owner of the equitable title to the real estate involved, the finding of the court on that issue was negative to him and he is, of course, without effective position to assert the insufficiency of the evidence to support the finding in that regard. This rule of law is so well known that we do not feel it necessary to cite authorities. This answers the appellant's assigned specification No. 10. He is, therefore, relegated to the remaining position that the decision, or finding, is contrary to law because he was denied relief to which he was entitled under the evidence.

The first remaining question we are called upon to decide, under the law applicable, is: Did the appellant establish by a preponderance of the evidence of probative value that the property involved herein was held under an express trust, or by a superior measure of proof a resulting trust, for the benefit of the appellant, as is claimed by him in his cross complaint?

In the case before us, the alleged and pretended agreement, if any, rested solely in parol. We do not find any evidence that the alleged agreement was ever reduced to writing and signed by the parties, or made a part of a deed secured by Elmer Matthews; nor does it appear that anything was omitted from the deed which it was the intention of the appellant to have embodied therein as required by §56-601, Burns' Ind. Stat., 1951 Replacement, which provides:

> "No trust concerning lands, except such as may arise by implication of law, shall be created, *unless in writing, signed by the party creating the same,* or by his attorney thereto lawfully authorized in writing." (Our emphasis.)

In construing this statute, this court held in the case of *Koehler* v. *Koehler* (1919) (T. D. 1921), 75 Ind. App. 510, 121 N. E. 450, that *this section refers only to trust created by the owner of the real estate.* In this decision, our court pointed out, at p. 525:

"It will be observed that this section refers to only one party. The words 'signed by the party creating the same, or by his attorney,' denote the owner of the real estate. No person other than the one having dominion can create and impress upon real estate an express trust. 2 Pomeroy's Eq. Jurisp. (2d ed.) §987 *et seq.* Trusts of this kind can be created only by a writing which conforms strictly to the provisions of said section. Such trusts are usually created by deed or will. 39 Cyc 24. Obviously the act was designed to operate as a statute of frauds; and the first section thereof, in the absence of fraud, forever puts at rest, as between grantor and grantee, all controversies concerning any pretended express trusts which rest only in parol." Citing authorities.

Measured by the above-announced doctrine of our court, construing §56-601, Burns', *supra,* found in the Koehler v. Koehler case, *supra,* the evidence of the appellant, as shown by the record in the case at bar, excludes the idea of an express trust in the said real estate.

A resulting trust under the statute may arise from any one of three conditions, namely (1) Where a conveyance is taken in the name of the alienee without the consent of the party paying the purchase money; (2) Where the alienee, in violation of some trust, has purchased the land with money not his own; (3) Where, by agreement, the party to whom the conveyance was made was to hold the land in trust for the party paying the purchase money or some part thereof. Burns' Ind. Stat., §56-608, 1951 Replacement.

It is apparent from the record that neither of the

first two conditions is here involved. To establish a resulting trust under the third clause, our court has said, in the case of *Koehler* v. *Koehler, supra,* at pp. 528, 529:

> "In order that a trust may arise within clause 3 the following elements are essential: (1) The parties must have made an agreement of the kind indicated therein. The agreement is absolutely required by the plain words of the statute. *Glidewell* v. *Spaugh* (1866), 26 Ind. 319; *Acker* v. *Priest* (1894), 92 Iowa 610, 616, 61 N. W. 235. (2) The agreement must have been made before the title to the real estate was acquired. *Westerfield* v. *Kimmer* (1882), 82 Ind. 365; *Boyer* v. *Libey* (1882), 88 Ind. 235. (3) There must have been a valuable consideration for the agreement. But the consideration need not consist of actual money. *White* v. *Sheldon* (1868), 4 Nev. 280. (4) The transaction must be free from fraud. (5) The proof must be clear and unequivocal. *Blair* v. *Bass* (1838), 4 Blackf. 539; *Baker* v. *Leathers, supra; Fausler* v. *Jones* (1855), 7 Ind. 277; *Turner* v. *First National Bank* (1881), 78 Ind. 19; *Westerfield* v. *Kimmer, supra.* But the agreement need not be in writing, and is not objectionable on the ground that it is an attempt indirectly to create an express trust in violation of §1 of the statute. *McDonald* v. *McDonald* (1865), 24 Ind. 68; *Radcliff* v. *Radford* (1884), 96 Ind. 482; 2 Pomeroy's Eq. Jurisp. (2d ed.) §1040; 1 Perry, Trusts (6th ed.) §137. (6) The agreement must be fair; for a court of equity will not enforce an unconscionable agreement either through the doctrine of specific performance or through the doctrine of resulting trusts." See, also, *Costa et al.* v. *Costa et al., supra; Vonville* v. *Dexter* (1948) (T. D. 1948), 118 Ind. App. 187, 76 N. E. 2d 856; *Rickes* v. *Rickes* (1923) (T. D. 1924), 81 Ind. App. 533, 141 N. E. 486.

Our court has always held that to sustain a trust relation by oral evidence, the proof thereof must be clear and distinct and that the standard of evidence for such purpose is a superior measure of proof. As stated in the Costa et al. v. Costa et

al. case, *supra,* "The evidence must be higher in quality to substantiate the same—that is, in clearness, fullness and persuasiveness, . . ." and, in the case of *Vonville* v. *Dexter, supra,* at p. 208, it is said that, *"In equitable actions of this nature the rule is that 'While a resulting trust may be established by parol evidence:* It is settled by a complete unanimity of decisions *that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt.'"* (Our emphasis.)

The record clearly shows that the evidence introduced by the appellant is not of such high quality as to substantiate the averments of his cross complaint with the clearness, fullness, and persuasiveness required by our courts.

In order to be as brief as possible, we do not deem it necessary to set forth the evidence introduced by the appellant. We believe after reviewing it in the record before us, we cannot find wherein the appellant's proof that the appellant and his deceased brother, Elmer, ever made an agreement as provided for by Clause (3) of the statute. In order for the appellant to quiet an equitable title derived through a resulting trust, proof of a trust agreement made either before or at the time of the execution of the conveyance is absolutely necessary. *Ferguson et al.* v. *Mix et al.* (1955), 125 Ind. App. 251, 123 N. E. 2d 909; *Toney* v. *Wendling et al.* (1894), 138 Ind. 228, 37 N. E. 598; *People's, etc., Trust Co., Exr.* v. *Mills* (1923), 193 Ind. 131, 139 N. E. 145.

Neither do we find proof that Judd, the appellant, furnished the purchase money with which Elmer purchased the Sheriff's Certificate or that Elmer ever agreed to hold the realty in trust for Judd. The most substantial evidence we find in the record of the ap-

pellant in attempting to prove a trust in said realty is the following memorandum in Elmer's handwriting: "Lake loan, sheriff papers to Elmer—has them $813.61 all told—$56.53 Sherif got. June 29th at Warsaw, Ind. (Sale was) Elmer was present and paid $800."

The foregoing memorandum is far from clear and from its phraseology, it is impossible to say what the maker meant.

We do not deem it necessary to cite authority that the construction or interpretation of the memorandum was for the trial court and it is entirely possible that the trial court did not consider that evidence to be *clear, strong, unequivocal, unmistakable and established the fact of a trust agreement or the payment by the alleged beneficiary for the Sheriff's Certificate beyond a doubt as is required. Vonville* v. *Dexter, supra,* at pp. 208, 209, and authorities cited. This is especially true since the memorandum stated "Elmer was present and paid $800."

It is true that the record before us reveals that a short time before Elmer purchased the Sheriff's Certificate for the property involved in this cause, he purchased for Eight Hundred ($800.00) Dollars Judd's interest in Lot 29 in Logansport; however, the record is devoid of any substantial evidence of probative value however that the Eight Hundred ($800.00) Dollars Elmer paid toward the purchase of the Sheriff's Certificate of Sale in satisfaction of the purchase was money due from him to Judd for Lot 29 in Logansport, nor that the said Sheriff's Certificate and later his deed were to be taken in Elmer's name, with an understanding between him and Judd that it was to be for the benefit of and in trust for Judd as maintained by the appellant herein.

The record is devoid of any substantial evidence that we can find wherein the appellant shows a valuable con-

sideration for the alleged agreement. The Koehler case, *supra*, holds that one element that is essential is the proving of a valuable consideration for the agreement.

The record reveals that there was evidence introduced by the appellant to the effect that the realty involved was known before and after Elmer received the Sheriff's deed as "Judd's lake" or "Judd's cottage." It is a matter of common knowledge and not an unusual custom for property to be known by the name of a former owner.

We believe, after reviewing all the evidence in the record before us, that this case places squarely within the general rule of law that parol evidence of facts giving rise to resulting trusts must be received with caution.

". . . So reluctant are the courts to ingraft a trust by parol on the legal title to real estate, or to enforce an alleged parol trust in personal property that there is perhaps no better-established doctrine than the one which requires a high degree of proof in order to establish the trust by parol evidence. This rule requiring an extraordinary degree or certainty of proof in this class of cases has been applied or recognized in practically all jurisdictions, but with a wide variety of statements regarding the kind of testimony essential to establish the trust. It has been said that there is perhaps no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which ingrafts a parol trust upon a legal title. *The courts are particularly emphatic in the statements and application of the rule where there has been delay in the assertion of the trust against one having legal title, resulting in difficulty in procuring witnesses and in establishing a defense, especially where the trust is based on communications or transactions with a person since deceased."* 54 Am. Jur. 478, §620. (Our emphasis.)

It appears undoubtedly that the trial court reached

the conclusion that the appellant had not sustained the burden of proof to establish a resulting trust in the real estate as maintained by the appellant with clear, strong, unequivocal and unmistakable evidence as measured by the above-announced doctrine. The action of the trial court must be presumed to be correct, and this presumption in favor of the correct action of the trial court is one of the strongest presumptions applicable to consideration of a cause on appeal, and this presumption is particularly applicable in determining questions which affect the weight or sufficiency of the evidence. *N. Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453; *Wisconsin Nat. Life Ins. Co.* v. *Meixel* (1943), 221 Ind. 650, 51 N. E. 2d 78; *Ferrara* v. *Genduso* (1940), 216 Ind. 346, 24 N. E. 2d 692; Flanagan, Wiltrout & Hamilton's Indiana Trial and Appellate Practice, Vol. 2, ch. 56, p. 370, §2790, Comment 1.

In reviewing the evidence in the record before us, without in any sense weighing the evidence, we think that, accepting all the evidence most favorable to the appellee and all legitimate inferences therefrom, we must agree with the trial court that the appellant has failed to establish a resulting trust by the superior measure of proof required by the declared doctrines of a cause above-referred to. As a consequence, the judgment appealed from is, in all things, affirmed.

NOTE.—Reported in 154 N. E. 2d 806.