McKINLEY, EXECUTRIX ETC. ET AL. *v.* OVERBAY.

[No. 19,380. Filed October 5, 1961.]

274

*Shake & Welsh,* of Vincennes, and *J. Raymond Powell,* of Linton, for appellants.

*Horace A. Foncannon, Jr., Lewis & Lewis, James L. Lewis,* all of Vincennes, and *McDonald & McDonald,* of Princeton, for appellee.

COOPER, J.—This is an action wherein an executrix of the estate of Orlando Overbay sought to partition real estate and quiet title to an undivided one-half in-

terest therein upon the theory of an alleged resulting trust against the appellee herein, Mary J. Overbay, in the Circuit Court of Knox County.

It appears from the record that the cause was venued to Greene County, and, after the issues were formed, the cause was submitted on the appellants' second amended complaint in two paragraphs; trial was by the court without the intervention of a jury, and, after submission, the court found against the appellants herein (plaintiffs below) on both paragraphs, and entered judgment for the appellee herein.

The assigned error before us is the trial court's action in overruling appellants' motion for a new trial. The appellants' motion for a new trial, omitting the formal caption, is as follows:

"1. The decision of the court is contrary to law.

"2. The decision of the court is not sustained by sufficient evidence.

"3. The court erred in permitting the defendant's witnesses to testify, over the plantiffs' objections, as to statements made by the decedent, Orlando Overbay, in his lifetime."

Being of the opinion that items two and three of said motion present nothing to us for determination, we will discuss those first.

Specification number two is that the decision of the court is not sustained by sufficient evidence, but, where, as in this cause, the appellants undertook the initial burden of proving a trust and that he was the owner of equitable title to the real estate involved, the finding of the court on that issue was negative to him, and he is, of course, without effective position to assert the insufficiency of the evidence to support the finding in that regard. This rule of law is so well known that we do not feel it necessary to

cite many authorities on this point, as both the Supreme Court and our court have repeatedly held that such error presents no question for review. However, see the cases of *Hinds, Executor etc.* v. *McNair et al.* (1955), 235 Ind. 34, 41, 129 N. E. 2d 553; *Matthews* v. *Adoniram Grand Lodge of Perfection* (1958), 129 Ind. App. 395, 154 N. E. 2d 806; *Metrailer* v. *Bishop* (1959), 130 Ind. App. 77, 162 N. E. 2d 94.

Specification number three asserts error in permitting certain witnesses of the appellee to testify over the appellants' objections. The Supreme Court and our court have repeatedly held that to present error in the admission or exclusion of evidence, the motion for a new trial must set forth the question, objection, the ruling of the court and the answer, or at least the substance thereof. *Ray* v. *State* (1954), 233 Ind. 495, 120 N. E. 2d 176; *Gernhart* v. *State* (1954), 233 Ind. 470, 120 N. E. 2d 265; *Hire* v. *Pinkerton* (1955), 126 Ind. App. 23, 127 N. E. 2d 244; *Henderson* v. *State* (1955), 235 Ind. 132, 131 N. E. 2d 326; *Highshew* v. *Kushto* (1956) (T.D. 1956), 126 Ind. App. 584, 131 N. E. 2d 652; §1812, Flanagan, Wiltrout & Hamilton's, Indiana Trial and Appellate Practice.

It affirmatively appears that the appellants in their foregoing motion for a new trial do not state the grounds upon which the objection was based or the court's ruling thereon, and, is, therefore, subject to the same infirmities as are pointed out hereinabove. See *Mustafov* v. *Metropolitan Life Ins. Co.* (1955), 125 Ind. App. 388, 125 N. E. 2d 824; *Inter-Ocean Casualty Co.* v. *Wilkins* (1932) (T.D. 1933), 96 Ind. App. 231, 182 N. E. 252. Therefore, no question is presented for our determination by the appellants' specification number three.

This leaves only specification number one of the appellants' motion for a new trial for our consideration, the same being, "The decision of the court ■ is contrary to law." It is true, a negative verdict or decision may be attacked under such specification. See *Hinds, Executor etc.* v. *McNair et al., supra,* at p. 41; *Wilson, Admx.* v. *Rollings* (1938), 214 Ind. 155, 14 N. E. 2d 905. In the Hinds case, *supra,* at p. 41, we find the following statement of law:

"If the undisputed evidence entitles the one who has the burden of proof to a verdict which has been denied him, such verdict is contrary ■■ to law. To determine this question we may consider only the evidence most favorable to the appellees together with all reasonable inferences which may be drawn therefrom.
" 'It is only where the evidence is without conflict and can lead to but one conclusion, that the decision of the trial court will be set ■ aside on the ground that it is contrary to law.'
"*Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 532, 104 N. E. 2d 669."

In reviewing the record we find the following averment in Paragraph 1, item 6 of the appellants' second amended complaint:

"6. The record title to the whole of said described real estate is in the name of the defendant, but said real estate was acquired and has been improved and operated with funds contributed in equal shares by the decedent, Orlando Overbay, and said defendant. *The record title to said real estate was, by agreement between the said decedent and the said defendant, vested in the name of the said defendant on and with the understanding between them that said defendant would hold title to an undivided one-half interest in and to said real estate as trustee for the use and benefit of said decedent. Said defendant undertook to and did agree with said decedent to hold title to an un-*

*divided one-half interest in said real estate as trustee for said decedent."* (Our emphasis)

And, in Paragraph 2, item 6 of the appellants' second amended complaint, we find the following averment:

"The record title to the whole of said described real estate is in the name of the defendant, but said real estate was acquired and has been improved and operated with funds contributed in equal shares by the decedent, Orlando Overbay, and said defendant. *The record title to said real estate was, by agreement between the said decedent and the said defendant, vested in the name of the said defendant on and with the understanding between them that said defendant would hold title to an undivided one-half interest in and to said real estate as trustee for the use and benefit of said decedent. Said defendant undertook to and did agree with said decedent to hold title to an undivided one-half interest in said real estate as trustee for said decedent."* (Our emphasis)

The foregoing averments, it seems to us, are phrased to aver an alleged express trust, as distinguished from a constructive or resulting trust. See Flanagan, Wiltrout and Hamilton, pp. 650-651.

The evidence and exhibits in the record are far more voluminous, comprising two hundred and eighty-three pages of testimony, than the meager evidence set forth in the appellants' brief, which consists of five and one-half pages.

We shall consider first the evidence in the record with reference to the aforesaid averments as to express trusts. In reviewing such evidence, it appears that the alleged and pretended agreement, if any, rested solely on parol.

Sec. 56-601, Burns' Stat., 1955 Repl., relating to such matters, provides:

"No trust concerning lands, except such as may arise by implication of law, shall be created, unless in writing, signed by the party creating the same, or by his attorney thereto lawfully authorized in writing."

For our court's interpretation of this statute in similar matters, see *Lehman* v. *Pierce* (1941), 109 Ind. App. 497, 36 N. E. 2d 952, 954, 955, and *Koehler* v. *Koehler* (1919) (T.D. 1921), 75 Ind. App. 510, 121 N. E. 450, and authorities cited therein.

Measured by the above-announced doctrine of our court construing said §56-601, *supra,* as found in the cases of *Lehman* v. *Pierce, supra,* and *Koehler* v. *Koehler, supra,* we fail to find any evidence that the foregoing alleged agreement was ever reduced to writing, signed by the parties or made a part of the deed. Nor, does it appear that anything was omitted from the deed which it was the intention of the deceased, Orlando Overbay, to have embodied therein. The failure of the evidence to affirmatively disclose such facts excludes the idea of an express trust in said real estate.

Notwithstanding the general rule of law that a complaint must proceed upon some definite theory (see the case of *Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co.* [1938], 104 Ind. App. 540, 12 N. E. 2d 396), it is apparent from the appellants' brief filed in this cause that they have attempted to change the theory as to the alleged type of trust which existed between the deceased, Orlando Overbay, and Mary J. Overbay, the appellee herein, in this court on appeal.

It is apparent from the record that in the court below, the appellants proceeded upon the theory of an express trust based upon an agreement, and now, on appeal, are attempting to proceed upon the theory of a

constructive trust as set out in the argument portion of appellants' brief.

Under the evidence as reflected by the record and the law applicable to constructive trusts, the appellants cannot prevail even upon this theory for the following reasons.

Our Supreme Court in the recent case of *Brown* v. *Brown* (1956), 235 Ind. 563, at 567, 135 N. E. 2d 614, in defining a constructive trust, made the following statement:

> " 'A constructive trust, or as frequently called an involuntary trust, is a fiction of equity, devised to the end that the equitable remedies available against a convention fiduciary may be available under the same name and processes against one who through fraud or mistake or by any means ex maleficio acquires property of another.' " 3 Bogert Trusts Pt. 1, ch. 24, §471, p. 6."

The Supreme Court also stated that:

> "The rule is firmly established in Indiana that fraud, actual or constructive, constitutes an essential ingredient of a constructive trust. *Terry* v. *Davenport* (1916), 185 Ind. 561, 571, 112 N. E. 998; *Alexander* v. *Spaulding* (1903), 160 Ind. 176, 181, 66 N. E. 694; *Noe* v. *Roll* (1893), 134 Ind. 115, 119, 33 N. E. 905.
>
> " 'Constructive fraud is fraud which arises by operation of law, "from acts or (a) course of conduct which, if sanctioned by law, would, either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Leader Publishing Co. et al.* v. *Grant Trust and Savings Co., Trustee* (1914), 182 Ind. 651, 660, 108 N. E. 121.' *Ballard* v. *Drake's Estate* (1937), 103 Ind. App. 143, 148, 5 N. E. 2d 671.
>
> "Constructive fraud has also been defined as 'a breach of legal or equitable duty which, irrespec-

tive of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.' *Daly* v. *Showers* (1937), 104 Ind. App. 480, 486, 8 N. E. 2d 139.

"Such acts or breach of duty may include mistake, undue influence, or duress. 3 Bogert Trusts Pt. 1, ch. 24, §474, p. 26; 3 Scott on Trusts, §462.2, p. 2317.

"There is no unyielding rule or formulae for the describing of a constructive trust. *Beatty* v. *Guggenheim Exploration Co.* (1919), 225 N. Y. 380, 122 N. E. 378, 381.

"The rule as laid down in Indiana with the reason therefore is ably stated in *Westphal* v. *Heckman* (1916), 185 Ind. 88, 97, 113 N. E. 299, as follows:

" 'A constructive trust arises in cases where the transaction involved is tainted by fraud, actual or constructive. In such cases, in order to prevent the wrongdoer from reaping a benefit from his fraud, a court of equity will construct a trust such as equity and good conscience requires in order to do justice to the parties affected by the fraudulent transaction. In such cases the court does not act upon and enforce parol agreement to hold land in trust as the primary thing. It is the fraud or undue influence connected with the original transaction which justifies the court in constructing a trust and holding the wrongdoer responsible as a trustee *maleficio.*'

"This court was confronted with a set of facts similar to that now before us, in *Alexander* v. *Spaulding, supra* (1903), 160 Ind. 176, 66 N. E. 694, where one Franklin Spaulding purchased certain lands, had the same conveyed to the defendants therein to hold in trust for him, and afterwards traded such lands for other lands and had the conveyance made to the defendants, leaving the same in secret trust to such defendants for himself and heirs. The grantees paid no consideration for the lands, and it was alleged in the complaint that

the decedent owned the lands at the time of his death and that they were part of his real estate.

"This court there held that the conveyance did not create a trust, and, at page 181 of 160 Ind., said:

" 'No fraud is charged from beginning to end, and no such a state of facts pleaded as calls for the interposition of a court of equity to prevent the failure of justice.'

"See also: *Meredith* v. *Meredith* (1898), 150 Ind. 299, 50 N. E. 29, where a trust was alleged in lands deeded by the father of appellant to her husband and charged to her as an advancement out of her father's estate. This court there held that the evidence was not sufficient to establish a constructive trust, and, at page 301 of 150 Ind., quoting from *Wright* v. *Moody* (1888), 116 Ind. 175, 18 N. E. 608, said:

" 'The element essential to a constructive trust is, that fraud, either actual or constructive, must have intervened. Such trusts are raised by courts of chancery only in cases where it becomes necessary to prevent a failure of justice, and in most cases where there is no intention or agreement of the parties to create such a relation. *Cox* v. *Arnsmann*, 76 Ind. 210; *Tinkler* v. *Swaynie*, 71 Ind. 562; 1 Perry Trusts, section 166, 2 Pom. Eq. Jur., Section 1044.'

"And, further, at page 301 of 150 Ind.:

" 'There is no fraud, *per se*, in such a transaction; and if fraud actually exists in connection therewith, the same must be alleged and proved. *Baker* v. *Leathers*, 3 Ind. 558; *Hileman* v. *Hileman*, 85 Ind. 1; *Noe* v. *Roll*, 134 Ind. 115; *Lewis* v. *Stanley*, 148 Ind. 351.' See also: *Ray* v. *Baker* (1905), 165 Ind. 74, 84, 74 N. E. 619."

There was no fraud alleged in the case at bar, and a careful search of the record fails to reveal any evidence of fraud, either actual or constructive.

In order to be brief as possible, we do not deem it necessary to set forth the evidence introduced by the appellants, but believe it sufficient to say that the un-

contradicted evidence in the record before us reflects that the decedent, Orlando Overbay, for several years prior to his death, made the statement to at least eight different persons that the real esate involved in this cause belonged to the appellee herein.

Our Supreme Court has stated that such evidence pertaining to trusts is, ". . . There is no better evidence against a man than his own declarations continuously reiterated throughout manhood and age for more than thirty years." *Radcliff et al.* v. *Radford* (1884), 96 Ind. 482, 491.

In reviewing the evidence in the record before us and without in any sense weighing the same, we think that, accepting all the evidence most favorable to the appellee and all legitimate inferences therefrom, we must agree with the trial court that the appellants have failed to establish a trust of any nature whatsoever in the real estate involved in this cause; therefore, the judgment appealed from is, in all things, affirmed.

Ax, J., Myers, J., Ryan, P. J., concur.

NOTE.—Reported in 177 N. E. 2d 389.